## STATE v. MARSHALL PUETT.

(Filed 4 November, 1936.)

**1. Criminal Law I c:  L f—**

Remarks of the court in the presence of the jury which tend to discredit a witness will be held for reversible error upon appeal of the injured party, but when such remarks are made during defendant's cross-examination of a State's witness, defendant cannot be prejudiced thereby and his exception thereto cannot be sustained. C. S., 564.

**2. Homicide G c—Dying declarations must have been made by person for whose death defendant is being prosecuted.**

The rule permitting testimony of dying declarations is an exception to the hearsay rule, and such exception does not extend to the admission of a dying declaration of a person whose death is not the basis of the prosecution, although he was mortally injured in the same fight in which the person was killed for whose death defendant is being prosecuted, and although such declarations relate to the fatal combat.

**3. Criminal Law I g—**

An exception to the charge cannot be sustained when the charge is not prejudicial when read contextually as a whole.

**4. Same—**

The failure of the charge to contain certain contentions of defendant will not be held for error in the absence of an apt request by defendant for such special instructions.

APPEAL by the defendant from *Clement, J.,* at June Term, 1936, of BURKE. No error.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*

*J. B. Riddle, Jr., and Mull & Patton for defendant, appellant.*

SCHENCK, J. After the solicitor had announced that he would not ask for a conviction of murder in the first degree, the defendant was convicted of manslaughter upon a bill of indictment charging the murder of Walter Puett.

The evidence tended to show a fight between the deceased, Walter Puett, on the one side, and the defendant Marshall Puett, brother of the deceased, and Lee Puett, son of the defendant, on the other side. Both Walter Puett and Lee Puett received mortal wounds from which they died the following day.

Ersilie Clark, a daughter of Walter Puett, was called as a witness for the State, and testified in effect that she went to the scene of the difficulty and saw Cleve Workman "wring" the hammer out of the hand of the defendant, and that the defendant "picked up the pistol and drawed it on me" and "shot twice." In the record of the cross-examination of this witness, Ersilie Clark, appears the following: "When I first heard the noise of the difficulty on that day I was sitting on the porch of my father's home stringing beans; like there is a fence here and I live only a little further, and this difficulty was down in the corn patch. Q. Is it 1 mile or ½ mile? A. It is not either. By the court: Mr. Patton, I think you are wasting your time, for it is a known fact that a woman has no conception of distance; whether she is educated and intelligent or an uneducated woman; they just do not seem to be able to estimate distances. By Mr. Patton: Your Honor, I wish to except to the statement just made. By the Court: Gentlemen of the jury, do not pay any attention to what I said about women not having any conception of distance; forget about it; I do not want to prejudice the case. To the foregoing remark by the court to counsel for the defendant, in the presence and hearing of the jury, the defendant excepts. This constitutes the defendant's Exception No. 2."

The appellant in his brief contends that "the distance witness was from the scene of the difficulty was material and relevant, bearing upon her credibility as to what she saw, and the remarks of the court amounted to an expression of opinion prejudicial to the cause of the prisoner," and was in violation of C. S., 564. While the statute prohibits the judge from giving an opinion as to whether "a fact is fully or sufficiently proven," such an opinion, if expressed by the judge, must be an opinion adverse to the interest of the appellant in order to avail him upon appeal. The opinion expressed by his Honor as to the inability of women to estimate distance, if it had any effect, had the effect of lessening the strength, or of minimizing the weight of the testimony of the witness, who was a witness for the State, and therefore, if there was any error, it was prejudicial to the interest of the State, and not to that of the defendant. The rule is clearly expressed in these words: "Any

remarks of the presiding judge, made in the presence of the jury, which have a tendency to prejudice their minds *against the unsuccessful party,* will afford ground for reversal of the judgment." *Perry v. Perry,* 144 N. C., 328 (330). To constitute reversible error, an expression of opinion on the part of the court must be prejudicial to the interest of the appellant. This assignment of error cannot be sustained.

The defendant introduced as a witness Dr. J. B. Riddle, the attending physician of Lee Puett, who testified, in the absence of the jury, as follows: "I told him (Lee Puett) he was going to die and that I wanted what we call a death-bed statement, and explained what that was to him. He said he realized it was all up with him. I asked him to tell me from the start up what happened, and he said he came by his uncle's house and his uncle (Walter Puett, the deceased) came out and said, by God, I want pay for my corn that the cattle had destroyed, and he told him to come to town or that he would pick men and let them decide and he would pay it, and that he had started to where his father (Marshall Puett, the defendant) was working on the fence between the pasture and corn where the cattle had been breaking through, so he went to where his father was and his uncle followed and said, by God, I would have settled it, and his uncle jerked his pistol out and shot him, and he said that then he hit his uncle with a pipe something like this, he and his father, and that his father and his uncle went together and fell, and that his father was under the bottom, as I recall it, and that his father called to him to get the gun, and that he, Lee, grabbed the gun and shot, but he said he did not know whether he hit him or not. That was the statement the boy made to me just as near as I can remember it. Lee, at the time of making this statement, was absolutely conscious, but was gradually bleeding to death; he was in a dying condition and did die soon after."

The objection of the State to this testimony was sustained, and the defendant excepted, and makes this exception the basis for an assignment of error. This assignment of error presents the question as to whether the dying declaration of one who was engaged in the fatal combat, but for whose death the defendant is not on trial, is competent evidence in behalf of the defendant.

The general rule in the trial of criminal cases requires the witnesses to appear in person and submit to cross-examination. The admission of the dying declaration of the deceased, in behalf of the defendant as well as in behalf of the State, *S. v. Mitchell,* 209 N. C., 1, in the trial of the person charged with the unlawful homicide of the declarant is an universally recognized exception to the general rule, but this exception has never been extended so as to include the dying declarations of others than the person for whose unlawful homicide the prisoner is on trial.

Such dying declarations are only admissible where the death of the one making them is the subject of the trial, and the circumstances of the death are the subject of the declarations. Wharton's Criminal Evidence, Vol. 1, sec. 544, page 886. "To render dying declarations admissible in evidence, they must have been made by the victim in a case of homicide where the death of the declarant is the subject of the charge and where the circumstances of the death constitute the subject of the declarations." *People v. Cox,* 340 Ill., 111, 172 N. E., 64, and cases there cited. See, also, *Commonwealth v. Stallone* (Penn.), 126 Atl., 56, and *Westberry v. State* (Ga.), 164 S. E., 905. This assignment of error cannot be sustained.

We have examined the other exceptions to the admission and exclusion of evidence brought forward in the brief and find no prejudicial error.

We have also examined those assignments of error which assail various excerpts from the charge, as well as except to the failure to include in the charge certain contentions and legal principles. We are of the opinion, and so hold, that when the charge is read contextually and as a whole, it is free from reversible error, and in the absence of any requests for the presentation of any omitted contentions or legal principles their omission cannot be held for error.

No error.