STATE OF NORTH CAROLINA v. DERMONT JARRELL CONRAD, TAL-
TON GALLIMORE, JR., AND TERRY JAMES DAVIS

No. 30

(Filed 18 June 1969)

**1. Criminal Law § 15— change of venue — unfavorable pre-trial pub-
licity**

No error is disclosed in the trial court's denial of defendants' motion
for a change of venue on the ground of unfavorable pre-trial publicity
where the trial judge conducted a full inquiry, examined the newspaper
articles and other news releases, considered affidavits presented by de-
fendants and the State, and concluded that an impartial jury could be se-
lected from the county, and the record fails to show that any juror ob-
jectionable to either defendant was permitted to sit on the trial panel or
that either defendant exhausted his peremptory challenges.

**2. Indictment and Warrant § 13; Conspiracy § 4— indictment for
conspiracy — co-conspirators — bill of particulars**

In a prosecution upon an indictment charging that the three named de-
fendants conspired "among themselves, with each other, and diverse others"
to commit murder, the trial court did not err in denying defendants' mo-
tion for a bill of particulars setting forth the names of the "diverse others"
referred to in the indictment where the solicitor advised the court that he
did not know the names of any others and the State did not offer evi-
dence involving anyone except those charged by name in the indictment.
G.S. 15-143.

**3. Conspiracy § 3— continuing offense**

Even though the offense of conspiracy is complete upon the formation
of the illegal agreement, the offense continues until the conspiracy is con-
summated or is abandoned.

**4. Conspiracy § 6— order of proof of conspiracy**

Because of the nature of the offense of criminal conspiracy, courts have
recognized the inherent difficulty in proving the formation and activities
of the criminal plan and have allowed wide lattitude in the order in
which pertinent facts are offered in evidence, and a verdict rested thereon
will not be disturbed if at the close of the evidence every constituent of
the offense charged has been proved.

**5. Conspiracy § 5— acts and declarations of co-conspirators**

When evidence of a *prima facie* case of conspiracy has been introduced,
the acts and declarations of each party to the conspiracy in furtherance
of its objectives are admissible against the other members.

**6. Conspiracy § 5— consideration of acts of one conspirator against
other conspirators — necessary findings**

Consideration of the acts and declarations of one conspirator as evidence
against his co-conspirators should be conditioned upon a finding that (1)
a conspiracy existed, (2) the acts were done or the declarations were made
by a party to the conspiracy and in pursuance of its objectives, and (3)
the acts or declarations occurred while the conspiracy was active.

**7. Conspiracy § 5— consideration of acts of conspirator before or after existence of conspiracy**

Acts performed and declarations made before the conspiracy was formed or after it terminated are admissible only against the person who committed the acts or made the declarations.

**8. Conspiracy § 5— admission of acts and declarations of one conspirator**

In this joint trial of three defendants for conspiracy to commit murder, the trial court did not err in the admission of evidence of the acts and declarations of one defendant over objections of the remaining defendants where the acts were performed or the declarations were made during the active existence of the conspiracy and concerning its purpose, and the court limited the jury's consideration of such acts and declarations to those defendants who were present and participating at the time.

**9. Conspiracy § 5; Constitutional Law § 31; Criminal Law §§ 76, 95— joint trial — admission of acts and declarations of one conspirator — right to confrontation**

In this joint trial of three defendants for conspiracy to commit murder, the "right to confrontation rule" enunciated in *Bruton v. United States*, 391 U.S. 123, is not violated by the admission of evidence of the acts or declarations of one defendant in furtherance of the conspiracy for consideration against other defendants who were present and participating at the time.

**10. Criminal Law §§ 89, 99, 165— comment by trial court — expression of opinion on evidence**

Comment by the trial judge in ruling on the solicitor's objection to defense counsel's questions concerning the attempt of a key State's witness to commit suicide that "I don't see the relevancy, but I don't see the harm," *is held* not to constitute prejudicial error where the court required the witness to answer, notwithstanding evidence of the witness's attempt at suicide may have some relevancy as to her mental balance and her recollection sufficient to be impeaching.

**11. Criminal Law § 164— appellate review of nonsuit question — failure to move for nonsuit in trial court**

The sufficiency of the State's evidence in a criminal case is reviewable on appeal without regard to whether a motion was made pursuant to G.S. 15-173 in the trial court. G.S. 15-173.1.

**12. Conspiracy § 6; Property § 4— sufficiency of evidence of conspiracy and malicious destruction of property by explosives**

The evidence *is held* sufficient to be submitted to the jury as to defendants' guilt of conspiracy to commit murder and of malicious damage to an occupied dwelling and an automobile by use of explosives.

**13. Appeal and Error § 5— fatal error on face of record — notice by Supreme Court ex mero motu**

The Supreme Court will take notice ex mero motu of a defect or fatal error which appears upon the face of the record proper in matters of importance or to prevent injustice.

**14. Property § 4— malicious injury to property by explosives**

Both G.S. 14-49 and the amendment to that statute, G.S. 14-49.1, involve (1) wilful and malicious injury, (2) to real or personal property, (3) by the use of explosives, G.S. 14-49.1 providing additional punishment if the real or personal property is occupied by one or more persons.

**15. Property § 4— malicious injury to property by explosives — gist of offense**

The gist of the offense created by G.S. 14-49 is malicious injury or damage to property, real or personal, by use of high explosives.

**16. Property § 4— definition of "malicious"**

The word "malicious" as used in G.S. 14-49 connotes a feeling of animosity, hatred or ill will toward the owner, the possessor or the occupant.

**17. Property § 4— malicious damage to property by explosives — indictment**

An indictment under G.S. 14-49 should contain an identifying description of the property which the defendant damaged or attempted to damage by use of the explosive.

**18. Property § 4— malicious damage to property by explosives — indictment**

If the real or personal property was occupied at the time of the explosion, the indictment should be drawn under G.S. 14-49.1 and should name the occupant and describe the occupied property and any other property injured or attempted to be injured by the explosion, so that if proof of occupancy fails, the jury may consider whether defendant is guilty under G.S. 14-49 of the lesser included offense of malicious injury to unoccupied property.

**19. Property § 4— malicious damage to occupied dwelling and automobile — separate indictments — one explosion — possible verdicts**

In consolidated trial of separate indictments charging the same defendant with malicious damage to an occupied dwelling and malicious damage to an automobile, the indictment charging damage to the automobile will be treated as an additional count in the bill charging damage to the occupied dwelling, and where the evidence discloses that there was but one explosion which damaged the occupied dwelling and the automobile, the court should instruct the jury that if it finds defendant guilty of malicious injury to the occupied dwelling by use of dynamite, such would be the major offense in the indictment and the jury should not consider any other count or verdict.

**20. Property § 4— verdicts of guilty of malicious damage to occupied dwelling and automobile — one explosion**

In consolidated trial of separate indictments charging the same defendant with malicious damage to an occupied dwelling and malicious damage to an automobile, where the evidence discloses but one explosion and the jury returns a verdict finding defendant guilty of malicious damage to the occupied dwelling, a further jury verdict finding defendant guilty of malicious damage to the automobile should be treated as surplusage, since

the verdict of dynamiting the occupied dwelling contains the maximum charge under G.S. 14-49 as amended by G.S. 14-49.1.

THE defendants, Talton Gallimore, Jr. and Terry James Davis, petitioned for and were granted certiorari to review the decision of the North Carolina Court of Appeals filed February 26, 1969 finding no error in their trial, convictions and prison sentences on three felony charges tried at the June 24, 1968 Mixed Session, DAVIDSON Superior Court.

*Robert Morgan, Attorney General; Andrew A. Vanore, Jr., Staff Attorney for the State.*

*Barnes and Grimes by Jerry B. Grimes for the defendants Gallimore and Davis.*

HIGGINS, J.

The indictment in Case No. 13,678 charged that Dermont Jarrell Conrad, Talton Gallimore, Jr. and Terry James Davis "unlawfully, willfully, feloniously, wickedly . . . did conspire, confederate, agree and scheme among themselves, with each other and diverse others . . ." feloniously, wilfully, and deliberately to kill and to murder one Fred C. Sink.

In Case No. 13,664 Terry James Davis was indicted for the wilful, malicious and felonious damage, by the use of dynamite, to the dwelling house of Fred C. Sink, located at 318 Spruce Street in Lexington and occupied at the time by Fred C. Sink, his wife, and four daughters. In Case No. 13,665 Talton Gallimore, Jr. was separately indicted on the same charge. Both indictments were drawn under G.S. 14-49.1.

In Case No. 13,679, the defendant Gallimore was indicted for the wilful, malicious and felonious damage by the use of dynamite to the 1966 Mercury Comet automobile, the property of Fred C. Sink, and located at 318 Spruce Street in Lexington. In case No. 13,680, the defendant Davis was separately indicted on the same charge. The indictments were drawn under G.S. 14-49. All indictments were returned by the Grand Jury on January 22, 1968.

After a long trial, the jury returned guilty verdicts against Gallimore and Davis on all charges. The jury failed to agree as to Conrad. The court ordered a new trial as to him. In the conspiracy case, the court imposed on Gallimore and Davis sentences of 10 years in prison, to run concurrently with other sentences they were then serving. On the charges of malicious injury to the automobile, the court

imposed prison sentences of 20 years, to begin at the expiration of the sentences for conspiracy. On the charge of malicious damage to the occupied dwelling house of Fred C. Sink by the use of dynamite, the court imposed on each defendant a prison sentence of 40 years, to begin at the expiration of the sentence for malicious damage to the automobile.

The decision of the Court of Appeals finding no error in the trial is reported in 4 N.C. App. 50. In their petition for the review here, the defendants allege the trial court committed four prejudicial errors sufficient to require a new trial. The petitioners pray that the decision of the Court of Appeals be reversed. We discuss the four alleged errors in the order in which they are stated in the petition for certiorari.

[1] The petitioners allege the trial court erroneously, and in violation of their constitutional rights, denied their motion for a change of venue based upon the ground the pre-trial publicity in the area was so general and so adverse as to prevent the selection of a fair and impartial jury from Davidson County. The record discloses that the presiding judge conducted a full inquiry, examined the newspaper articles, other news releases, and the affidavits presented in support of the motion. The court also considered voluminous affidavits of representative citizens who expressed the opinion the defendants could receive a fair trial from a Davidson County jury. After careful review, the court concluded an impartial jury could be selected from Davidson County and denied the motion.

The record fails to show that any juror, objectionable to either defendant, was permitted to sit on the trial panel, or that either had exhausted his peremptory challenges before he passed the jury. Error in denying the motion for change of venue is not disclosed. *State v. Porth,* 269 N.C. 329; 153 S.E. 2d 10; *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453; *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44; *State. v. McKethan,* 269 N.C. 81, 152 S.E. 2d 341; *State v. Scales,* 242 N.C. 400, 87 S.E. 2d 916; *Irvin v. Dowd,* 366 U.S. 717.

[2] As a second ground for a new trial, the petitioners allege the trial court committed error in denying their motion for a bill of particulars in the conspiracy case. The indictment charged that the defendants and one Dermont Jarrell Conrad conspired "among themselves, with each other, and *diverse others*" to murder Fred C. Sink. The petitioners contend they were entitled to know the identity of "*diverse others*" in order to make adequate trial preparations. In response to the motion, the solicitor stated: "At the present time we do not know any others." Thereafter, the State did not offer evidence

involving anyone except those charged by name in the bill. Obviously the solicitor could not disclose the identity of persons unknown to him.

In *State v. Gallimore,* 272 N.C. 528, 158 S.E. 2d 505, this Court indicated that an indictment charging conspiracy should name the conspirators if known to the solicitor at the time the bill is drawn. If unknown at the time the bill is submitted to the Grand Jury, the solicitor, upon demand, should disclose the identity of others when ascertained and the disclosure should be made in time for counsel to complete trial preparations. In the instant case, however, the defendants were in no wise prejudiced by the inclusion of *"diverse others"* in the indictment. The evidence involved only the two petitioners and Conrad, the third defendant, as to whose guilt the jury was unable to agree. The trial court did not commit error either in denying the motion for particulars or in refusing to quash the indictment. G.S. 15-143; *State v. Banks,* 263 N.C. 784, 140 S.E. 2d 318; *State v. Barnes,* 253 N.C. 711, 117 S.E. 2d 849; *State v. Thornton,* 251 N.C. 658, 111 S.E. 2d 901; *State v. Van Pelt,* 136 N.C. 633.

**[3, 4]**    As a third ground for a new trial, each appellant contends evidence of the acts and declarations of the other defendants were introduced in evidence over his objection. Actually the court cautioned the jury to consider acts and declarations of one as evidence against him only, unless the other was actually present and participating. Due to the nature of the charge, the limitation was more favorable to the defendants than they had any right to expect. The charge is conspiracy — a partnership in crime. Generally, an unlawful agreement is made in secret and known only to the guilty parties. They conceal and cover up their unlawful activities. The more reprehensible the objective, the more carefully they plan to prevent detection and exposure. "Even though the offense of conspiracy is complete upon the formation of the illegal agreement, the offense continues until the conspiracy is consummated or is abandoned." *State v. Brewer,* 258 N.C. 533, 129 S.E. 2d 262; *United States v. Kissel,* 218 U.S. 601, 54 L. Ed. 1168. Because of the nature of the offense courts have recognized the inherent difficulty in proving the formation and activities of the criminal plan and have allowed wide latitude in the order in which pertinent facts are offered in evidence. "(A)nd if at the close of the evidence every constituent of the offense charged is proved the verdict rested thereon will not be disturbed. . . ." *State v. Thomas,* 244 N.C. 212; *State v. Jackson,* 82 N.C. 565.

"It (conspiracy) may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little

weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *State v. Whiteside,* 204 N.C. 710, 169 S.E. 711. "A declaration or act of one conspirator, to be admitted against his co-conspirators, must have been made when the conspiracy was still in existence and in progress." 16 Am. Jur. 2d, Conspiracy, § 40, p. 148, citing many decisions.

[5-7]    The general rule is that when evidence of a prima facie case of conspiracy has been introduced, the acts and declarations of each party to it in furtherance of its objectives are admissible against the other members. *State v. Gibson,* 233 N.C. 691, 65 S.E. 2d 508; *State v. Smith,* 221 N.C. 400, 20 S.E. 2d 360; 16 Am. Jur. 2d, Conspiracy, §§ 35, 36, 37, 38, pp. 146, 147 (citing authorities). Consideration of the acts or declarations of one as evidence against the co-conspirators should be conditioned upon a finding: (1) a conspiracy existed; (2) the acts or declarations were made by a party to it and in pursuance of its objectives; and (3) while it was active, that is, after it was formed and before it ended. *State v. Dale,* 218 N.C. 625, 12 S.E. 2d 556; *State v. Lea,* 203 N.C. 13, 164 S.E. 737; 11 Am. Jur. 571. Of course a different rule applies to acts and declarations made before the conspiracy was formed or after it terminated. Prior or subsequent acts or declarations are admissible only against him who committed the acts or made the declarations.

[8, 9]    In the instant case, however, Judge Collier, in each instance throughout the trial, limited the acts and declarations to those actually present and participating at the time. These declarations were made by a party to the conspiracy during its active existence and concerning its purposes. The admissions do not violate the "right to confrontation rule" enunciated by the United States Supreme Court in *Bruton v. United States,* 391 U.S. 123. Bruton and one Evans were indicted in the United States District Court for a postal robbery. During the interrogation, Evans confessed to the investigating officer, and implicated Bruton in the robbery. At the trial the officer was permitted to relate to the jury the statement made to him by Evans implicating both Bruton and himself. The Supreme Court granted Bruton a new trial on the ground he was denied the right to cross examine Evans whose statements, implicating him, were relayed to the jury by the officer. The Court held the trial judge's instruction to the jury not to consider the admission of Evans to the officer as evidence against Bruton was insufficient to defeat the right of confrontation.

[10]    As a fourth and final ground for a new trial, the appellants allege the court made a prejudicial remark in ruling on the solici-

tor's objection to defense counsel's questions concerning the attempt of a State's witness to commit suicide. Hattie Dean Proctor had given testimony strongly implicating both Gallimore and Davis in the conspiracy and in the substantive offenses. She and Gallimore had a falling out and had separated because of another woman. According to her story, Gallimore had assaulted her. Defense counsel, on cross examination, sought to establish bias or the mental instability of the witness.

"Q.   At the time you split up in May, 1966 what did you do?

A.   I took a bunch of pills and cut my arm.

Q.   As a result of that were you hospitalized anywhere?

A.   Yes.

OBJECTION BY SOLICITOR

COURT:   I don't see the relevancy, but I don't see the harm. Objection overruled. Answer the question.

A.   The Cherry Hospital in Goldsboro."

In the light of the prejudicial testimony which the witness had given against both Gallimore and Davis, her attempt at suicide conceivably might have some relevancy as to her mental balance and her recollection sufficient to be impeaching. *State v. Exum,* 213 N.C. 16, 195 S.E. 2d 7. Conceding but not deciding defense counsel's question and the witness' answer may have had some materiality, although the court thought otherwise, nevertheless, the court required the witness to answer. The chance remark that the judge failed to see relevancy does not amount to prejudicial error. "In the circumstances, the court's statement, if phrased as appears in the record, does not constitute *prejudicial* error." *Pickens v. Pickens,* 258 N.C. 84, 127 S.E. 2d 889.

[11]   The petition for certiorari does not allege the failure to nonsuit as error in the trial. However, defense counsel strenuously argued on the review here the insufficiency of the evidence to warrant its submission to the jury. The case is one of great importance both to the State and to the defendants. "The sufficiency of the evidence of the State in a criminal case is reviewable upon appeal without regard to whether a motion has been made pursuant to G.S. 15-173 in the trial court." G.S. 15-173.1.

[12]   The State examined many witnesses. Its evidence, bit by bit, when fitted together, appears to disclose a clear picture of a plot to kill Sheriff Sink and to blow up his automobile and his occupied home. Gallimore and Davis are shown to have been active in the con-

spiracy and in the substantive offenses charged. However, it is not necessary to discuss the evidence against Conrad. The jurors considered it and were unable to agree as to his guilt.

The keystone of the State's case against Gallimore and Davis is disclosed by short excerpts from the evidence of two witnesses. Hattie Dean Proctor, formerly Gallimore's girlfriend, testified that she went with Gallimore to a hardware store in Kinston and while there she purchased for him 50 dynamite caps and 25 feet of dynamite fuse.

Later, she and Gallimore were arrested in Sumter, South Carolina. They were returned to Davidson County by Sheriff Sink and Jack Richardson and placed in jail. After they were released on bond, she and Gallimore went to the home of her mother where the defendant Davis joined them. She detailed this conversation: "Talton said he was going to blow Fred and Jack to hell and Jimmy Davis said 'that's the thing we ought to do' ". The witness went with Gallimore to his grandmother's home in Davidson County. They got 20 sticks of dynamite from the attic. "I asked him what he was going to do with it. He said he was going to blow Fred and Jack to hell. He said, 'make it look like an accident'. . . ."

Larry Hedrick testified that on Saturday (before the explosion the following morning) he drove Gallimore and Davis to the old Gallimore home near Denton. On the way they talked about blowing up a car. They went to an old shack behind the house and got some dynamite. "On the way back they was [sic] talking about putting it on Fred Sink's car and blowing it up." Back at the garage after the explosion "Talton asked Jimmy did he think the F.B.I. would be investigating. Jimmy told him 'yes' because explosives were involved."

The State's evidence disclosed that on and prior to November 27, 1967 Sheriff Sink had been actively pursuing Gallimore, Davis and Conrad for their alleged violations of the criminal law. At that time the sheriff lived in a brick house on Spruce Street in Lexington. On Saturday night, November 26, Sheriff Sink, his wife and four (named) daughters, aged 2 to 12 years, were in the house. All were asleep. The sheriff's automobile was parked in the drive near the front of the house. At about 8 minutes after 12:00 on Sunday morning, November 27, the automobile was completely destroyed by an explosion. The rear axle, with one of the wheels attached, was blown across the street into a neighbor's yard. The explosion forced open the front door to the house, breaking the lock. Windows were blown out and broken glass scattered over all rooms. Window screens were bent double. Window sills on the side of the house near the explosion

were shattered. The explosion opened cracks in the outside walls and in the plaster inside. Windows in neighbor's houses across the street were smashed.

[12]  Neither of the defendants testified as a witness. The trial court and the Court of Appeals on the review correctly held the evidence presented jury questions. The weight of the evidence was for the jury. *State v. Whiteside, supra.*

[13]  We have reviewed all legal objections raised by the defendants and have found them without merit. Nevertheless, we have examined the record proper and have concluded that error appears on the face of that record with respect to one of the charges. In matters of importance or to prevent injustice, the Court, *ex mero motu,* will take notice of a defect or fatal error which appears upon the face of the record proper. *In Re Burton,* 257 N.C. 534, 126 S.E. 2d 581; *Skinner v. Transformadora,* 252 N.C. 320, 113 S.E. 2d 717; *In Re Davis,* 248 N.C. 423, 103 S.E. 2d 503.

An indictment was returned against each defendant charging the wilful and malicious damage to the sheriff's occupied dwelling by the use of dynamite. The bills were drawn under G.S. 14-49.1, which provides:

> "Any person who shall wilfully and maliciously damage or attempt to damage any dwelling, building, vehicle, real or personal property of any kind or nature, being at the time occupied by one or more persons, by the use of nitroglycerine, dynamite, gunpowder or other high explosive, shall be guilty of a felony, and on conviction shall be punished by imprisonment in the State prison for not less than 10 years and not more than life."

[14]  An indictment was also returned against each defendant for the wilful and malicious damage to the sheriff's automobile by the use of explosives. These bills were drawn under G.S. 14-49, which provides:

> "Any person who shall wilfully and maliciously injure or attempt to injure any person, or any building, equipment, real or personal property of any kind or nature belonging to another person, firm or corporation, by the use of nitroglycerine, dynamite, gunpowder or other high explosive, shall be guilty of a felony, and on conviction shall be punished by imprisonment in the State prison for not less than five years and not more than thirty years."

G.S. 14-49.1, enacted as Chapter 342, Session Laws of 1967, amended G.S. 14-49. Both the original and the amendment involve (1) wilful

and malicious injury, (2) to real or personal property, (3) by the use of explosives. G.S. 14-49.1 provides additional punishment *if the real or personal property is "occupied by one or more other persons"*.

**[15-17]**   The gist of the offense created by G.S. 14-49 is malicious injury or damage to property, real or personal, by the use of high explosives. The word "malicious" as used in the statute connotes a feeling of animosity, hatred or ill will toward the owner, the possessor, or the occupant. The word "property" is defined in the statute as "real or personal property of any kind or nature". No distinction whatever is made between real and personal property. One blast from a high explosive may injure both real and personal property. The indictment should contain an identifying description of the property which the defendant damaged or attempted to damage by the use of the explosive.

**[18]**   If the property, real or personal, was occupied at the time of the explosion, the indictment should describe the property and name the occupant. The indictment should be drawn under G.S. 14-49.1 and should include not only the description of the occupied property but any other property injured or attempted to be injured by the explosion so that if proof of occupancy fails, the jury could consider whether the defendant is guilty under G.S. 14-49 of the lesser included offense of malicious injury to unoccupied property. *State v. Bell,* 228 N.C. 659, 46 S.E. 2d 834.

**[19, 20]**   All the evidence discloses that there was a single explosion which seriously damaged Sheriff Sink's occupied dwelling and his automobile parked beside the house. We may treat the indictments in Nos. 13,679 and 13,680 charging the damage to the automobile as additional counts in the bills in Nos. 13,664 and 13,665 which charge damage to the occupied dwelling. "Ordinarily where separate bills of indictment are returned and the bills are consolidated for trial as authorized by G.S. 15-152, the counts contained in the respective bills will be treated as though they were separate counts in one bill. . . ." *State v. Austin,* 241 N.C. 548, 85 S.E. 2d 924; *State v. Braxton,* 230 N.C. 312, 52 S.E. 2d 895. However, since there was one explosion, the court should have charged the jury that if it found the defendants were guilty of malicious injury to the occupied dwelling house by the use of dynamite, that such would be the major offense in the indictment and the jury should not consider any other counts or verdicts. Since the verdict of dynamiting the occupied dwelling contains the maximum charge under G.S. 14-49, as amended by G.S. 14-49.1, the verdicts for dynamiting the auto-

mobile should be treated as surplusage, should be set aside, and the judgments should be arrested. This Court said in *State v. Stone,* 240 N.C. 606:

> "The conviction for an assault on a female may be treated as surplusage. This is a lesser offense included in the charge of assault with attempt to commit rape. A conviction of an assault on a female could only be sustained provided the jury acquitted of the greater offense."

This Court said in *State v. Birckhead,* 256 N.C. 494:

> "Where the second indictment is for a crime greater in degree than the first and where both indictments arise out of the same act, it is held that an acquittal or conviction for the first is a bar to prosecution for the second." *State v. Midgett,* 214 N.C. 107, 198 S.E. 613.

The effect of the 1967 amendment (G.S. 14-49.1) increasing the penalty if the property is occupied, is analogous to the effect of G.S. 14-87 on the crime of robbery. The section drastically increased the penalty for robbery if the perpetrator committed or attempted to commit the offense by the use or threatened use of firearms or other dangerous weapons. The charge of robbery with firearms will support a verdict for common law robbery as a lesser included offense if the lesser offense is embraced within the allegations of the indictment and supported by the evidence. *State v. Norris,* 264 N.C. 470, 141 S.E. 2d 869. This Court said in *State v. Bell, supra:*

> "It is true that in a prosecution for robbery with firearms, an accused may be acquitted of the major charge and convicted of an included or a lesser offense, such as common law robbery, or assault, or larceny from the person, or simple larceny, if a verdict for the included or lesser offense is supported by allegations of the indictment and by evidence on the trial." (Citing authorities)

Since the judgments provide the sentences on the charges of malicious injury to the occupied dwelling are to begin at the expiration of the sentences imposed for damage to the automobile (which we have ordered vacated) it is necessary for the judgments and the commitments to be corrected to the end that the prison sentences shall begin at the expiration of the sentences on the conspiracy charge.

The decision of the Court of Appeals in No. 13,678 charging conspiracy if affirmed. Likewise, the decision of the Court of Appeals in Nos. 13,664 and 13,665 charging malicious damage to the occupied dwelling of Sheriff Sink is affirmed. In Nos. 13,679 and 13,680 charg-

ing malicious injury to the Sheriff's automobile by the use of explosives, the decision of the Court of Appeals is reversed, the verdicts will be set aside, and the judgments will be arrested.

The Court of Appeals will remand to the Superior Court of Davidson County for disposition in accordance with this opinion. As a matter of precaution, the solicitor should notify defense counsel and have the defendants in court at the time the change is made in the judgments with respect to the date on which service of the sentences in Nos. 13,664 and 13,665 shall begin.

As to Case Nos. 13,678, 13,664 and 13,665 — Affirmed.

As to Case Nos. 13,679 and 13,680 — Judgment arrested and cases remanded with directions.

PARKER, C.J., did not participate in the decision of this case.