STATE OF NORTH CAROLINA v. DONALD LEE HARDING

No. 58

(Filed 7 December 1976)

1. **Criminal Law § 15— change of venue — denial of motion proper**

Where the trial judge conducted a full inquiry on defendant's motion for change of venue on the ground of prejudicial pretrial publicity and examined the press releases and the affidavits in support of the motion, and where the record failed to show that any juror objectionable to the defendant was permitted to sit on the trial panel or that defendant had exhausted his peremptory challenges before he passed the jury, the denial of the motion for change of venue was not error.

2. **Criminal Law § 92; Homicide § 16— three murders — dying declarations of one victim — consolidation of cases proper**

Where defendant was charged with three murders, two of which occurred in the same room within seconds of each other and the third of which occurred shortly thereafter, and all three were committed under similar circumstances, consolidation was proper, and it was not rendered improper by the admission into evidence of the dying declarations of one of the victims, since, pursuant to G.S. 8-51.1, the declarations of the victim were admissible against the defendant on all three murder charges, regardless of whether the cases were tried separately or were consolidated.

3. **Criminal Law 89; Homicide § 16— dying declaration — evidence admissible for corroboration**

The trial court in a homicide prosecution did not err in permitting a witness to testify to an alleged dying declaration of one of the murder victims, since the testimony was admissible for the purpose of corroboration.

4. **Homicide § 16— statements not mentioning death — subsequent dying declarations not invalidated**

The mere fact that a homicide victim had made earlier statements implicating the defendant in which he did not express a fear of death in no way invalidated later statements to the same effect which clearly qualified as dying declarations, and the trial court properly allowed testimony of the declarations into evidence.

5. **Criminal Law § 69— homicide victim's phone call — identity of caller established — evidence admissible**

The trial court in a homicide prosecution did not err in allowing a telephone operator to testify concerning telephone calls she received from a man who identified himself as one of the victims who had been shot by defendant, since evidence was sufficient to establish the identity of the caller.

6. **Criminal Law § 101— failure to sequester jury — no error**

The trial court did not err in denying defendant's motion to sequester the jury overnight where the court gave the jurors instruc-

tions not to read newspapers about the case, watch the news, listen to the radio or discuss the trial with anyone, the jurors indicated the next morning that they followed the instructions, and nothing in the record indicated any impropriety on the part of any juror.

**7. Homicide § 16— dying declarations — showing required of State**

In a prosecution for homicide, defendant's contention that the trial court, before allowing the victim's dying declarations into evidence, should have required the State to prove that the declarant had a reputation for veracity and that the declarant did not harbor any feeling of ill will toward the defendant is without merit.

**8. Homicide § 21— first degree murder — death by shooting — sufficiency of evidence**

Evidence was sufficient to withstand defendant's motion for directed verdict in a homicide prosecution where it tended to show that one of the victims made dying declarations to the effect that defendant shot him and another victim in the other victim's home; the third victim, who was the wife of the declarant, accompanied her husband to the other victim's home; her death occurred within a half hour after her arrival at the home; she was shot in a manner similar to the other victims; her body was found nine miles from the house; someone tried to burn her car, just as defendant had tried to burn the house where the other two victims were found; and bullets removed from her body could have been fired from the same gun used to shoot the other victims.

**9. Constitutional Law § 36; Homicide § 31— first degree murder — life imprisonment substituted for death penalty**

A sentence of life imprisonment is substituted for the death penalty previously imposed in this homicide prosecution.

APPEAL by defendant from *Kivett, J.*, at the 2 February 1976 Session of IREDELL Superior Court.

Upon three indictments proper in form and consolidated for trial, defendant was convicted of first degree murder in the deaths of Mary Bowen Englebert, Douglas MacArthur Harding, and Clyde Ray Englebert and sentenced to death in each case.

The State's evidence tended to show:

About 1:00 a.m., on 20 September 1975, deceased Clyde Ray Englebert received a telephone call from deceased Douglas Harding requesting that he come to the Harding residence at once. Englebert could hear defendant Donald Harding's voice in the background. Englebert and his wife, Mary, drove to the Harding residence in their Javelin automobile, arriving about 1:30 a.m. Mary waited in the car.

When Englebert walked inside, the defendant, Donald Harding, was standing in the middle of the den with a gun in his hand. Englebert went over to the sink behind the bar to get a drink of liquor. When he turned around, he observed Donald Harding pointing the gun at him and asked the defendant not to aim at him. As Englebert turned away, Donald Harding shot him causing him to fall to the floor. Donald Harding then turned to his cousin, Douglas Harding, who was sitting on the couch, and proceeded to shoot him. Returning to where Englebert was lying the defendant shot him again, this time in the head as he tried to stand up. Defendant finished by shooting Douglas Harding a second time. Englebert received two bullet wounds in the chest area and one in the head area. Douglas Harding's body had two head wounds, a chest wound and a back wound from which he died almost immediately. Before leaving the Douglas Harding house, the defendant turned up the stereo and tried to set fire to the house.

After Donald Harding had left, Englebert tried several times to call the telephone operator between 2 a.m. and 3 a.m. to let her know he had been shot before he was finally able to advise her of his condition and location. The operator could hear loud country and western music in the background. At one point Englebert crawled out to the carport apparently in search of his wife. Shortly after the last telephone call, Cecil Cook, a Detective Sergeant with the Iredell County Sheriff's Department, and other officers arrived at the scene. Loud country and western music was still playing. Clyde Ray Englebert was transferred to the hospital where he died four days later as a result of the gunshot wounds.

The body of Mary Bowen Englebert was discovered the same morning about nine miles from the Harding residence and about two miles from the Javelin automobile. Mrs. Englebert had been shot twice, once in the abdomen and once in the back of the head. Her handbag and a bottle of Ancient Age Whiskey with a Mount Pleasant, North Carolina liquor store stamp, were found in the car. An identical bottle with a Mount Pleasant stamp had been seen at the Douglas Harding residence the evening before but had disappeared by the time the police arrived. Someone had apparently unsuccessfully started a fire in the car. According to medical testimony, the estimated time of Mary Englebert's death was 2 a.m., 20 September 1975.

Bullets, either .38 caliber or .357 magnum, removed from the bodies of Douglas Harding and Clyde Ray Englebert, were fired by the same gun. The .38 caliber bullet removed from Mrs. Englebert could have been fired from the same gun that fired the other bullets. Some live ammunition and spent shells were found in the driveway at the Douglas Harding residence. The spent cartridges were fired in the gun that was used to kill Douglas Harding and Clyde Ray Englebert. The death weapon was never recovered.

The State relied for its case upon circumstantial evidence and dying declarations made by Clyde Ray Englebert to Detective Cecil Cook. The State offered other declarations of Clyde Ray Englebert to Detective David Henson, Brenda Josey, Lettie Walker, Steven Ray Englebert, and Special Agent Richard Lester for the purpose of corroborating the alleged dying declaration made to Detective Cook.

The defendant offered no evidence.

Other facts pertinent to the decision will be related in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Roy A. Giles, Jr. for the State.*

*Warren A. Winthrop for defendant appellant.*

COPELAND, Justice.

[1]   Under Assignment of Error No. 1, defendant contends that the trial court erroneously denied his motion requesting a change of venue on the ground that unfavorable and inflammatory pretrial publicity would prevent him from receiving a fair and impartial trial in Iredell County.

In support of his motion, argued about one month before trial, defendant's attorney offered seven newspaper clippings concerning the murders and an affidavit to the effect that he, defense counsel, had talked with fifteen to twenty people in the county about the murders, all of whom indicated that they had formed opinions as to defendant's guilt. In addition, it was stipulated that the Statesville Record and Landmark in which accounts of the crimes had appeared had a circulation of approximately 17,000 in Iredell County and that the county had a population of between 70,500 and 75,000.

On 2 February 1976, the date the trial commenced, defendant renewed his motion and introduced an article describing the crimes which appeared in the February 1976 Issue of "Inside Detective" magazine. However, no showing was made of the number of issues of this magazine circulated in the county. Defense counsel also pointed out that news accounts of the crimes were broadcast over local radio and television stations.

On both occasions, the court concluded that the defendant could receive a fair and impartial trial in Iredell County and denied the motion for change of venue. Defendant did not bring forward on appeal the newspaper and magazine articles.

Defendant's motion for a change of venue was addressed to the sound discretion of the trial court. *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453 (1967) ; *State v. McKethan,* 269, N.C. 81, 152 S.E. 2d 341 (1967) ; *State v. Scales,* 242 N.C. 400, 87 S.E. 2d 916 (1955) ; G.S. § 1-84 (Cum. Supp. 1975). Where the record discloses, as it does in the instant case, that the presiding judge conducted a full inquiry, examined the press releases and the affidavits in support of the motion, and where the record fails to show that any juror objectionable to the defendant was permitted to sit on the trial panel, or that defendant had exhausted his peremptory challenges before he passed the jury, denial of the motion for change of venue was not error. *State v. Conrad,* 275 N.C. 342, 168 S.E. 2d 39 (1969) ; *See State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1967).

**[2]** Under Assignment of Error No. 2, defendant maintains the trial court erred in consolidating the three cases for trial.

Defendant argues that it was improper to consolidate these cases in light of our decision in *State v. Puett,* 210 N.C. 633, 188 S.E. 75 (1936), holding that dying declarations are admissible only where the death of the declarant "is the subject of the trial, and the circumstances of the death are the subject of the declarations." *State v. Puett, supra* at 636, 188 S.E. at 76. In *Puett,* the defendant was not permitted to introduce into evidence the dying declaration of his son who was mortally injured in the same fight in which the person for whose death the defendant was being prosecuted was killed. The son's death was not the subject of the trial.

In the present case, the homicide of the declarant, Clyde Ray Englebert, was at issue and the declarations admitted into

evidence related to the circumstances surrounding his death. Nevertheless, defendant argues that the consolidation allowed the State to put into evidence otherwise inadmissible statements because if the defendant had not been tried separately for the three murders, the statements could not have been introduced, under the *Puett* rule, in separate trials for the deaths of Douglas Harding and Mary Bowen Englebert.

While the defendant presents a tenable argument for severance of the cases under prior law, we note that the passage of G.S. 8-51.1 (Cum. Supp. 1975) eliminated the need for our resolution of this issue. Since the enactment of G.S. 8-51.1 (effective 1 October 1973), the "dying declarations of a deceased person regarding the cause or circumstances of his death" have been admissible in evidence in all civil and criminal trials and other judicial and administrative proceedings. The statute effectively overruled this Court's holding in *Puett* and thus the declarations of Englebert were admissible against the defendant on all three murder charges, regardless of whether the cases were tried separately or were consolidated. For one commentator's view of the effect of G.S. 8-51.1, see 1 Stansbury's N. C. Evidence, § 146 (Brandis Rev. Supp. 1976) at 151, 152 n. 12.

Consolidation is a discretionary matter with the trial judge and where the offenses charged constitute a continuing criminal episode and are so related in time and circumstance as to permit the admission in evidence of each in the trial of the others, consolidation is appropriate. *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974) ; *State v. Arsad,* 269 N.C. 184, 152 S.E. 2d 99 (1967) ; G.S. 15A-926 (Supp. 1975). Two of the murders occurred in the same room within seconds of each other and the murder of the wife followed shortly thereafter. All were committed under similar circumstances and thus consolidation was unquestionably proper.

[3] Next, under Assignment of Error No. 3, the defendant challenges the trial court's permitting David Henson to testify to an alleged dying declaration of Clyde Ray Englebert.

Henson was the first witness called to testify by the State and was also the first member of the Sheriff's Department to arrive at the murder scene. When it became apparent that Henson's testimony would involve alleged dying declarations, a voir dire was held. The district attorney wisely took this opportunity

to examine on voir dire all prospective witnesses that he planned to use in connection with alleged dying declarations.

After the voir dire, the district attorney called to the witness stand, Detective Cecil Cook. Detective Cook indicated that he talked with Clyde Ray Englebert in the hospital on 23 September 1975 when Englebert was in the Intensive Care Unit. At that time, Englebert told Detective Cook that "he didn't think he would pull through." Detective Cook promptly took Englebert's full statement implicating the defendant in the shootings of Englebert and Douglas Harding. After this statement was given, Detective Cook asked Englebert if he would "testify to what he had told me in Court." Englebert replied "I don't think I will be able to, but I hope I live to see that crazy S.O.B. behind bars." Englebert "was breathing very heavily and had a rattling noise from his chest and he was awful pale [in] color." Clyde Ray Englebert died the next day.

Defendant did not object to the above testimony.

David Henson was then recalled and, upon objection by defense counsel to a statement he was about to make implicating the defendant in the murders, Judge Kivett instructed the jury "that you may consider any statement this witness makes attributed to Clyde Ray Englebert solely for the purpose of corroborating the statement Clyde Ray Englebert allegedly made to Detective Cook who testified a moment ago." The judge defined corroboration and reiterated his admonition to the jurors that the testimony was to be considered as corroboration only.

Assuming, without deciding, that the declarations of Clyde Ray Englebert to David Henson did not qualify as dying declarations under G.S. 8-51.1, this testimony was clearly competent to corroborate the statements made by Englebert to Detective Cook. State v. Cadell, 287 N.C. 266, 215 S.E. 2d 348 (1975) ; 1 Stansbury's N. C. Evidence, §§ 51, 52 (Brandis Rev. 1973).

Moreover, a statement by Englebert to Deputy Sheriff Henson, who was the first officer to arrive on the scene, may have been competent as a spontaneous utterance had it not been proffered for the purpose of corroboration. See State v. Deck, 285 N.C. 209, 203 S.E. 2d 830 (1974) ; 1 Stansbury's N. C. Evidence, § 164 (Brandis Rev. 1973).

This assignment of error is without merit and overruled.

[4]   Under Assignments of Error Nos. 4, 5, and 6, defendant asserts the trial court erred in allowing Detective Cecil Cook, Lettie Walker, and Steven Ray Englebert to testify concerning alleged dying declarations of Clyde Ray Englebert.

Counsel for the defendant in his brief appears to concede that Englebert's statements to these three witnesses were made when he was cognizant of imminent death, but argues that they were nevertheless inadmissible because earlier statements of the deceased admitted into evidence did not qualify as dying declarations. Defendant cites no authority to support his contention.

During the victim's conversations with these three witnesses, he expressed his apprehension of impending death. When he talked with Detective Cook on 23 September 1975, he told him he did not think he would be able to testify against the defendant, because he did not think he would pull through. When he discussed returning to work with Lettie Walker on 21 September 1975, he told her "I doubt if I make it two more days." When he spoke to his son, Steven Ray Englebert, on 22 September 1975, he said, "No, I won't be able to come back [to the store]. I don't believe I'll get better . . . Donald really messed me up." Each of these statements indicated that the "deceased was conscious of approaching death and believed there was no hope of recovery." G.S. 8-51.1 (Cum. Supp. 1975).

The mere fact that Clyde Ray Englebert had made earlier statements implicating the defendant in which he did not express a fear of death in no way invalidated later statements to the same effect which clearly qualified as dying declarations. Moreover, the earlier statements were competent to corroborate the later dying declarations. *State v. Debnam*, 222 N.C. 266, 22 S.E. 2d 562 (1942); *State v. Bell*, 212 N.C. 20, 192 S.E. 852 (1937).

This assignment of error is devoid of merit and overruled.

[5]   Defendant contends in Assignment of Error No. 8, that the trial judge erred in allowing the telephone operator, Brenda Josey, to testify concerning telephone calls she received from a man who identified himself as Clyde Ray Englebert. Defendant contests the admissibility of this testimony on the ground that the identity of the caller was not sufficiently established.

We first note that the entire testimony of this witness was introduced into evidence without objection and that no exception appears in the record to any portion of this testimony.

In *State v. Strickland,* 229 N.C. 201, 208, 49 S.E. 2d 469, 474 (1948) we held on the subject of telephone callers: "It is only necessary that identity of the person be shown directly or by circumstances somewhere in the development of the case, either then or later."

Brenda Josey testified that the caller identified himself as Ray Englebert and stated he had been shot, that she heard "extremely loud" country and western music in the background and that the caller gave his location as the Douglas Harding residence off Wilkesboro Road, Windy Hill Acres. After the operator reported this information to the Sheriff's Department, Detective Henson went to the Harding residence where he found Clyde Ray Englebert wounded and the stereo still playing loud country and western music. Later, Englebert stated to Detective Cook and Agent Lester that he called the operator for help but that she did not understand him. Clearly, this evidence established the identity of the caller as Clyde Ray Englebert.

**[3]** Defendant argues, in Assignment of Error No. 9, that the court erred in allowing SBI Agent Richard Lester to testify concerning alleged dying declarations of Clyde Ray Englebert.

Agent Lester spoke with the deceased twice on 20 September 1975 and once on 22 September 1975 when Englebert was in the Intensive Care Section of the hospital. Englebert's statements on these occasions to Agent Lester were admitted solely for the purpose of corroborating other testimony and *not* as dying declarations. Out of an abundance of caution, the able trial judge restricted the admission of these statements to corroboration, which was entirely proper under our case law. *State v. Debnam, supra; State v. Bell, supra.* However, considering Englebert's failing physical condition at the hospital and the statements he made to other hospital visitors evidencing his acceptance of approaching death, we believe Agent Lester's testimony could also have been admitted as dying declarations. G.S. 8-51.1.

This assignment of error lacks merit and is overruled.

**[6]** Defendant says in Assignment of Error No. 10 that the court erred in overruling defendant's motion to sequester the jury overnight.

The record discloses that Judge Kivett gave explicit instructions to the jurors before permitting them to go home for the evening. The jurors were told not to read any newspapers about the case, not to watch the local news on television, not to listen to the radio, and not to discuss the trial with anyone. They were also reminded of their oath. All jurors indicated that they understood the instructions and the next morning, indicated that they had followed the instructions.

Nothing in the record suggests any impropriety on the part of any juror. Sequestration is a discretionary matter with the trial judge and here no abuse of discretion appears. *State v. Bynum and Coley,* 282 N.C. 552, 193 S.E. 2d 725 (1973). The assignment of error is meritless and overruled.

Under Assignment of Error No. 11, defendant contends the court erred in allowing into evidence the dying declarations of Clyde Ray Englebert.

[7] Defendant maintains that the court should have required the State to prove two things prior to allowing the dying declarations into evidence: (1) that the declarant had a reputation for veracity, and (2) that the delarant did not harbor any feeling of ill will toward the defendant. Defendant offers no authority for this proposition and certainly nothing in G.S. 8-51.1 or our common law required this proof. Nothing in the record indicates that Clyde Ray Englebert had a reputation for lying or that he was motivated by ill will. As a matter of fact, the record fails to disclose any previous trouble between them.

If the defendant had evidence tending to impeach the credibility of the declarant, Clyde Ray Englebert, he should have introduced it. "A dying declaration is not conclusive, its weight and credibility being for the jury to determine. It may be impeached in the same manner as any other sworn statement." *State v. Debnam, supra* at 270, 22 S.E. 2d at 565.

In Assignment of Error No. 12, defendant claims the court erroneously denied his motion for a directed verdict.

On a defense motion for a directed verdict, evidence is considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. *State v. Bowden,* 290 N.C. 702, 228 S.E. 2d 414 (1976); *State v. Hunter,* 290 N.C. 556, 227 S.E. 2d 535 (1976).

[8]   The evidence, when considered in the light most favorable to the State, was clearly sufficient to withstand a motion for directed verdict in the murders of Clyde Ray Englebert and Douglas Harding. Without repeating the other evidence, we feel that Clyde Ray Englebert's statements that the defendant shot him and Douglas Harding were sufficient to carry these cases to the jury.

While there is no direct evidence that the defendant shot Mary Bowen Englebert, the circumstantial evidence points unerringly to that conclusion. Mary Bowen Englebert accompanied her husband to the Harding residence and waited in the car; when her injured husband crawled outside to the carport shortly thereafter, she and the Javelin automobile were apparently gone; the medical testimony placed her time of death within a half hour of her arrival at the Harding residence; her body was discovered nine miles from the Harding residence and two miles from the Javelin automobile; she was shot in a manner similar to the other victims—all the victims were shot in the chest or abdomen and in the head with the same caliber bullets; her handbag was found in the automobile along with a liquor bottle identical to the one which had been seen at the Harding residence earlier in the evening, but which was missing when the police arrived; someone had attempted to burn the car, just as the defendant had attempted to burn the house; spent cartridges found in the driveway of the Harding residence were fired in the same gun that was used to shoot the other victims, and bullets removed from Mary Bowen Englebert's body could have been fired from the same gun. When viewed as a whole, this evidence was sufficient to survive a motion for directed verdict.

Under Assignment of Error No. 13, defendant contends the trial court erred in failing to instruct the jury that it was not to consider the dying declarations of Clyde Ray Englebert in the cases of Mary Bowen Englebert and Douglas Harding.

The substance of this assignment is similar to defendant's contentions in Assignment of Error No. 2, relating to the consolidation of the three cases for trial. In essence, defendant says that even if consolidation was proper, *State v. Puett, supra,* would, at a minimum, require an instruction to the jury limiting their consideration of the dying declarations to the case of the murder of Charles Ray Englebert. Failure to give such an in-

struction, defendant contends, was prejudicial error because jurors cannot be expected to "segregate evidence into separate intellectual boxes" and Englebert's declarations directly implicated defendant in the murder of Douglas Harding and were an important piece of circumstantial evidence implicating defendant in the death of Mrs. Englebert.

In our disposition of Assignment of Error No. 2, we held that G.S. 8-51.1 would permit the admission of dying declarations of Clyde Ray Englebert, "concerning the circumstances of his death," in all three murder cases regardless of whether they were tried separately or consolidated. Similarly, G.S. 8-51.1 would make the instruction now requested by defendant unnecessary and improper.

[9]   The attorney general's office in its brief calls to our attention the imposition of the death penalty. In *Woodson v. North Carolina*, ___ U.S. ___, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (1976), the United States Supreme Court invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975), the statute under which defendant was sentenced. *Ex mero motu*, and by authority of the provisions of 1973 Sess. Laws, c. 1201 § 7 (1974 Session), we substitute a sentence of life imprisonment for the death penalty in each of these cases.

This case is remanded to the Superior Court of Iredell County with directions (1) that the presiding judge, without requiring the presence of defendant, enter judgments imposing life imprisonment for the three first-degree murders of which defendant has been convicted, and (2) that, in accordance with these judgments, the clerk of the superior court issue commitments in substitution for the commitments heretofore issued. It is further ordered that the clerk furnish to the defendant and his attorney a copy of the judgments and commitments as revised in accordance with this opinion.

This difficult case was well prepared by the district attorney and ably tried by Judge Kivett. We have considered all assigned errors and, because of the serious nature of this case, searched the record for errors other than those assigned and have found none prejudicial to the defendant, other than the failure of defense counsel to assign error under *Woodson v. North Carolina, supra.*

In the trial we find

No error.

Death sentences vacated, and in lieu thereof, life sentences imposed.