STATE OF NORTH CAROLINA v. RONALD DWAINE CARNES AND RICHARD ALLEN CARTER

No. 19

(Filed 10 November 1971)

1. **Robbery § 3— armed robbery — admission of loaded pistol not used in robbery**

Although the State's evidence tended to show that the only gun used in an armed robbery by two defendants was a .32 pistol found in defendants' car at the time of their arrest less than a half hour after the robbery, the trial court did not err in the admission of a .38 pistol found on the ground beside defendants' car on the same occasion or in the admission of testimony that it was loaded.

2. **Robbery § 3— armed robbery — bills and coins found in defendants' possession**

In this prosecution for the armed robbery of a food store, the trial court did not err in the admission of bills and coins found in defendants' pockets when they were arrested less than a half hour

after the robbery at a location two miles from the crime scene, notwithstanding there was a discrepancy between the aggregate of the bills and coins so found and the amount allegedly taken from the food store and there was no identification of the money in defendants' possession as that taken from the store.

**3. Criminal Law § 115— instructions on lesser degrees**

The necessity for instructing the jury as to an included crime of lesser degree than that charged arises only when there is evidence from which the jury could find that such included crime of lesser degree was committed. G.S. 15-169; G.S. 15-170.

**4. Robbery § 5— armed robbery — failure to submit lesser included offense**

In this armed robbery prosecution, the trial court did not err in failing to instruct the jury on lesser included offenses where the State's evidence showed a completed robbery at gunpoint and there was no evidence that would support a finding that either defendant was guilty of a lesser included offense.

**5. Criminal Law § 21— preliminary hearing — withdrawal of retained counsel — denial of continuance — court-appointed counsel representing two defendants**

Where an attorney had been appointed to represent two defendants charged with armed robbery, and an attorney retained by one defendant three days before a preliminary hearing was scheduled appeared at the hearing and requested that he be allowed to withdraw as counsel because he had not had sufficient time to prepare for the hearing, which request was allowed by the court, the trial court did not err in denying a motion for continuance of the preliminary hearing and in holding the hearing with the court-appointed attorney representing both defendants, notwithstanding one defendant stated that he did not want the court-appointed attorney to represent him.

APPEAL by defendants from *Johnston, J.,* November 9, 1970 Criminal Session of FORSYTH Superior Court, transferred for initial appellate review by the Supreme Court under general order of July 31, 1970, entered pursuant to G. S. 7A-31(b)(4).

Defendants, Ronald Dwaine Carnes (Carnes) and Richard Allen Carter (Carter), were charged in separate bills of indictment with robbery with firearms of Opal Juanita Stroud in violation of G.S. 14-87. Defendants pleaded not guilty and were represented at trial by Robert H. Sapp, Esq., court-appointed counsel.

The only evidence was that offered by the State.

The testimony of Mrs. Opal Juanita Stroud, summarized except where quoted, tends to show the facts narrated in the following two paragraphs.

Defendants entered the Li'l General Food Store on Patterson Avenue, Winston-Salem, at approximately 9:00 p.m. on September 10, 1970. Mrs. Opal Juanita Stroud, a new employee, was by herself at the back of the store. Carnes entered first and asked for a certain type of wine, which the store did not have. Carter asked where the cold wine was kept and said he would take two bottles of Red Ripple. Mrs. Stroud climbed on top of the cooler to get the wine. One of the defendants asked for Cold Duck, but the other wanted pink champagne, which Mrs. Stroud got. Several teenagers had come into the store by this time and a line had formed at the cash register at the front of the store, so Mrs. Stroud went to help the new arrivals. Carnes got in line and said something which Mrs. Stroud did not hear. Then he said, "This is a holdup." Mrs. Stroud disbelieving him, he said, "I am not kidding. This is a holdup, you better look at the door." Mrs. Stroud looked at the door and saw Carter "holding a .32 automatic gun" on her.

Carnes reached over the counter and took the money out of the open register. Carter called to him, saying, "Ronald, get it all, get the change—get it all." Scattering change over the floor, Carnes dropped the money he had gathered into the bag with the wine. He demanded four packs of Juicy Fruit, and Mrs. Stroud said nothing. He took the four packs of chewing gum and departed. Carter started to go but then went over to Mrs. Stroud and asked for her pocketbook. Mrs. Stroud denied having a pocketbook, whereupon Carter picked her pocketbook up from the floor and departed with it. The pocketbook, Mrs. Stroud believed, contained almost $50.00; the cash register had contained about $80.00. Later, in the police-station garage, she noticed, by chance, her pocketbook lying on the back seat of a white Toyota.

Sharon Fulton, whose testimony completely substantiated Mrs. Stroud's, went into the Li'l General Store just before the robbery. Miss Fulton fully recognized both defendants, having stood in line behind Carnes when the latter gave his order to "Look up," and then having looked up at Carter and at the gun he was pointing toward the people in the store. Miss Fulton had observed a white Toyota turn around in the bank parking lot opposite the Li'l General Store and go "around the corner" before she went into the store. After the robbery, she observed defendants walking toward a filling station near which a white Toyota was parked.

James Williams happened by the store, not knowing a robbery was taking place. He started to enter, but did not "because there were too many people standing around the door." He went on walking down the street, when he heard a running noise behind him. Two fellows, one of whom he positively identified as Carnes, ran to a white Toyota and got in. While they were trying to start the Toyota, Williams made a mental note of the license number and went back to the L'il General Food Store to inform Mrs. Stroud of it.

Police Officer R. U. Lloyd, on patrol on the evening of September 10, 1970, received a call on the radio concerning a white 1968 two-door Toyota, license number AX7145. He saw the car at approximately 9:30 p.m., two miles from the store. One defendant was in the car, the other outside. He pulled up behind them and told them to put their hands on the trunk of the car. He found a knife, several rounds of ammunition, and some change in Carnes' pockets. He found a large amount of coins in Carter's right front pocket and an unknown quantity of U. S. bills of unknown denomination in his left front pocket. A .32 caliber pistol and a box of .32 bullets were found in the glove compartment, and a lady's handbag on the back seat. He found "three bottles of wine, one empty in the right front floorboard of the car. All three bottles were cold. There were two bottles of Red Ripple and one bottle of Champagne." Just as the Toyota was being driven away by a fellow officer, Officer Lloyd observed a loaded .38 caliber pistol lying on the grass by the curb.

The money in question was turned over to Detective H. E. Hartsoe of the Winston-Salem Police Department. Hartsoe testified that the change amounted to $13.37; the bills totaled $68.00 in tens, fives, and ones; $3.19 was found in the pocketbook.

The jury returned verdicts of guilty as charged. As to each defendant, judgment imposing a sentence of not less than fifteen nor more than twenty years was pronounced. Defendants excepted and appealed.

*Attorney General Morgan and Deputy Attorney General Moody for the State.*

*Robert H. Sapp for defendant appellants.*

BOBBITT, Chief Justice.

Three assignments of error were brought forward by both defendants. Two relate to the admission of evidence and one relates to the judge's charge. An additional assignment of error is brought forward by Carnes and relates solely to him.

[1]   Each defendant assigns as error the admission in evidence of the .38 pistol and of testimony that it was loaded. He contends the pistol pointed at Mrs. Stroud when defendants were robbing her was a .32 and therefore evidence as to the loaded .38 found by Officer Lloyd when defendants were arrested was irrelevant.

The evidence shows the loaded .38 pistol was found beside the white Toyota less than half an hour after the robbery and at a location two miles from the Li'l General Food Store. It was found on the same occasion when the officers found the .32 pistol and a box of .32 bullets in the glove compartment, Mrs. Stroud's handbag on the back seat, bottles of wine and champagne from the Li'l General Food Store in the Toyota and bills and coins in the pockets of defendants.

If defendants, on the occasion of the robbery, had a loaded .38 pistol available for use in case their felonious venture "backfired," this would seem a relevant circumstance even though no necessity arose for the display or use of the loaded .38 pistol. Relevant or not, this evidence constituted an insignificant part of the State's case. The overwhelming evidence of defendants' guilt dispels any suggestion that prejudice resulted from the admission in evidence of the .38 pistol and of testimony that it was loaded.

[2]   Each defendant assigns as error the admission in evidence of the bills and coins found in defendants' pockets. Defendants direct attention to the discrepancy between the aggregate of the bills and coins so found and the amount allegedly taken from the Li'l General Food Store and to the failure to identify the money in defendants' possession as bills and coins taken from the Li'l General Food Store. In view of the time, place and circumstances of the arrest of defendants, the fact they had bills and coins in their possession would seem relevant. We perceive no prejudicial error in the admission of the bills and coins and the testimony relating thereto.

As to each defendant, the court instructed the jury they could return one of only two possible verdicts: "either guilty as

charged in the bill of indictment or not guilty." Each defendant assigns as error the court's failure to instruct the jury that they might find him "guilty of some lesser degree of the offense charged: common law robbery, attempted robbery, assault with a deadly weapon, or simple assault." The assignment is without merit.

G.S. 15-169 provides: "On the trial of any person for rape, or any felony whatsoever, when the crime charged includes an assault against the person, it is lawful for the jury to acquit of the felony and to find a verdict of guilty of assault against the person indicted, *if the evidence warrants such finding;* and when such verdict is found the court shall have power to imprison the person so found guilty of an assault, for any term now allowed by law in cases of conviction when the indictment was originally for the assault of a like character." (Our italics.)

G.S. 15-170 provides: "Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime."

[3]  G.S. 15-169 and G.S. 15-170 are applicable *only when there is evidence* tending to show that the defendant may be guilty of a lesser offense. *State v. Jones,* 249 N.C. 134, 139, 105 S.E. 2d 513, 516 (1958), and cases cited; *State v. Williams,* 275 N.C. 77, 88, 165 S.E. 2d 481, 488 (1969). "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor." *State v. Hicks,* 241 N.C. 156, 159, 84 S.E. 2d 545, 547 (1954) ; *State v. Williams, supra.*

[4]  In the present case, the State's evidence, which showed a completed robbery of Mrs. Stroud by defendants at gunpoint, was positive and unequivocal as to each and every element of the crimes charged in the bills of indictment. There was no evidence that would warrant or support a finding that either defendant was guilty of a lesser included offense. Hence, the court's instructions were proper.

[5]  There remains for consideration the additional assignment of error by Carnes. The record discloses the following pertinent

facts: Defendants were arrested on September 11, 1970. Each requested the assignment of counsel; and, upon findings that each was an indigent, Chief District Court Judge Abner Alexander appointed Robert H. Sapp, Esq., to represent them. Preliminary hearings were scheduled for September 21, 1970. On September 21, 1970, Sammie Chess, Jr., Esq., appearing before Judge Alexander in district court, stated that he had been retained as counsel for Carnes on September 18, 1970; that he had numerous cases in other courts that week; and that, because of insufficient time to prepare the case, he was not in position to try it at that time. Thereupon, Mr. Chess moved for leave to withdraw as counsel. Judge Alexander allowed this motion and ordered that Mr. Sapp proceed as counsel for both defendants notwithstanding Carnes stated he did not want Mr. Sapp to represent him.

A motion by Mr. Sapp that the preliminary hearings be deferred was denied. The preliminary hearings were held as scheduled. The record is silent as to what occcurred at the preliminary hearings except that Judge Alexander found probable cause as to each defendant and bound him over to the Superior Court of Forsyth County. At the preliminary hearings before Judge Alexander and later at trial in the superior court, both defendants were represented by Mr. Sapp, their court-appointed counsel.

In his brief, Carnes asserts that "it is probable that said attorney (Chess) would have remained as his attorney for the course of the trial" if the request for postponement of his preliminary hearing had been granted. This contention is pure speculation. Nothing in the record indicates any attempt was made to procure the services of Mr. Chess as counsel for Carnes in the superior court.

The record fails to show that Carnes was prejudiced in any way because he was represented by Mr. Sapp rather than by Mr. Chess at the preliminary hearing to determine whether the evidence was sufficient to support a finding of probable cause as to Carnes' guilt of armed robbery as charged in the warrant. Seemingly, both defendants were represented by their court-appointed counsel at the preliminary hearings and at trial in the superior court as effectively as the State's evidence and defendants' lack of evidence would permit.

Accordingly, the verdicts and judgments will not be disturbed.

No error.