STATE OF NORTH CAROLINA v. REGINALD STANLEY POLK

No. 152A83

(Filed 3 November 1983)

1. **Conspiracy § 5.1— statements by co-conspirators—admissibility against defendant**

   The State's evidence was sufficient to make a *prima facie* showing of a conspiracy to commit sexual assaults so that statements made by two co-conspirators in furtherance of the conspiracy were admissible against defendant where it tended to show that defendant and the two co-conspirators were in a convenience store parking lot when they observed the victim enter the parking lot; shortly thereafter, one co-conspirator went to the victim's automobile and was quickly joined by the other co-conspirator; one co-conspirator entered the automobile, and after he left the victim discovered

that her keys were missing; the second co-conspirator knew that the keys had been taken and enticed the victim into going with him on the pretext of recovering the keys; as the second co-conspirator and the victim walked away from the parking lot, defendant appeared and followed them; and the second co-conspirator then forced the victim to go to the steps of a nearby church where all three men took part in sexual assaults upon the victim.

**2. Conspiracy § 5.2— declarations of co-conspirators—prima facie case of conspiracy—order of proof**

Because of the nature of a conspiracy, the State can seldom establish a *prima facie* case of conspiracy by extrinsic evidence before tendering the acts and declarations of the conspirators which link them to the crimes charged. Therefore, our courts often permit the State to offer the acts or declarations of a conspirator before the *prima facie* case of conspiracy is sufficiently established, but the prosecution must properly prove the existence of the *prima facie* case of conspiracy before the close of the State's evidence in order to have the benefit of these declarations and acts.

**3. Conspiracy § 5.2— declarations of co-conspirators—failure to show prima facie case of conspiracy**

If inadmissible statements of co-conspirators are admitted and it develops that a case of conspiracy has not been shown, then upon proper motion the trial judge may strike the evidence of declarations or acts of the co-conspirators or grant a defendant's motion for judgment as of nonsuit if there is insufficient evidence to take the case to the jury without the aid of such declarations or acts.

**4. Conspiracy § 5.2— declarations of co-conspirators—voir dire hearing**

If he so chooses, the trial judge may, at any point in the trial, conduct a voir dire hearing in order to determine whether the evidence makes out a *prima facie* case of conspiracy for purposes of admitting the acts and declarations of co-conspirators in furtherance thereof.

**5. Rape and Allied Offenses § 2— aider and abettor of sexual offense—first degree offense**

Under our first degree sexual offense statute, an aider and abettor of a sexual offense is guilty of a first degree sexual offense or nothing at all. G.S. 14-27.4(a).

**6. Rape and Allied Offenses § 2— first degree sexual offense—aider and abettor**

By its enactment of G.S. 14-27.4(a)(2)(c), the legislature chose to include in the more serious first degree categories those sexual offenses which involved aiders and abettors and to subject to a harsher penalty those who participated in gang assaults, regardless of the actual role of the participant.

**7. Criminal Law §§ 26.5, 138; Rape and Allied Offenses § 7— first degree sexual offense—aider and abettor—no multiple convictions or enhanced punishment by use of same element twice**

Defendant was not subjected to multiple convictions or to enhanced punishment by an improper use of the same element twice when he was con-

victed of a first degree sexual offense on the theory that he aided and abetted two co-conspirators in a first degree sexual offense since defendant's acts of aiding and abetting, though used to elevate the charges against the co-conspirators to first degree offenses in the first instance, were used against defendant only once, that is, to find him guilty of the crime of first degree sexual offense by reason of aiding and abetting.

APPEAL by defendant from judgment of *Hobgood, Judge,* entered at the 25 October 1982 Session of WAKE County Superior Court.

Defendant was charged in bills of indictment proper in form with first-degree rape, first-degree sexual offense, and conspiracy to commit rape. Defendant entered pleas of not guilty to each of the offenses charged.

The State offered evidence tending to show the following:

The prosecutrix, Joyce Stancil Williams, was a registered nurse who worked the night shift at Rex Hospital in Raleigh, North Carolina. She had made arrangements to be off work the evening of 13 June 1982. She left her apartment at approximately 12:45 a.m. on 14 June 1982 to visit a friend on Calloway Drive, located off Old Garner Road. Upon arriving at Old Garner Road, Ms. Williams entered a Fast Fare driveway and was driving through to determine if a club at the other end of the street was open. As she did so, a black male, later identified as Mike Peebles, approached her car on the passenger side and asked what her name was and where she was going. He also asked her if she wanted to get high. When she responded in the negative, he opened the door on the passenger side and entered her automobile. Ms. Williams also noticed another black male approaching the driver's side of her car. The second male was later identified as Laney Partin. Partin also asked Ms. Williams for her name, where she was going, and about "smoking some reefer and snorting cocaine." After responding that she did not use drugs, Ms. Williams stated that she had to go indicating that she wanted him to leave her car. At that point, both men went to the rear of her car and began talking. Peebles then returned to his car and drove up Garner Road toward Bailey Drive. Ms. Williams then noticed that her keys were missing. She asked Partin about them and he replied that "those guys" probably had her keys, and that he would take her to get them. Ms. Williams left her car and

walked with Partin across a Gulf station yard adjacent to the Fast Fare. She observed a phone booth, and she attempted to call the police. Partin took the receiver out of her hand, told her to shut up, and pulled her out of the phone booth. He seized her arm and pushed her up Bailey Drive. When Ms. Williams began crying and asked him to stop, he hit her in the jaw with his fist and knocked her down into a mud puddle. Partin then jerked her up and pulled her arms behind her back and held them. When Partin struck Ms. Williams, her pocketbook fell off of her shoulder and some of its contents spilled out.

At that point, Ms. Williams noticed another black male coming down Bailey Drive toward them from the direction of the Circle of Faith Church. The man, later identified as defendant, picked up the pocketbook. As Partin shoved and pushed Ms. Williams along the street, she heard defendant walking behind them. Partin took Ms. Williams to the rear steps of the Circle of Faith Church. Ms. Williams saw three males standing at the back of the church. Two of the men were later identified as Michael Peebles and defendant.

Partin told Ms. Williams to pull her pants down and upon her refusal, he and defendant unfastened her jeans. Partin pushed her down on the steps and took off her pants and her underpants. While Peebles and defendant stood by, Partin had intercourse with her by force. During this time, one of the other men was holding her legs up in the air. Defendant then pushed Partin off of Ms. Williams, telling Partin that "he won't going to do anything." Defendant then began having intercourse with Ms. Williams, while Peebles held her legs up in the air.

At this point, Partin said, "I want some head, bitch," and shoved his penis into her mouth. When Partin removed his penis, Peebles forced his penis into her mouth. During this time, defendant was still having vaginal intercourse with the prosecutrix. At some point, Partin left. After defendant finished, Peebles had vaginal intercourse with her. At that time, Ms. Williams recognized the sound of her car approaching. She said, "Here comes the police. Y'all better get up." Defendant and Peebles both got up and ran.

Before she had time to put on her clothes, Ms. Williams heard her car being driven through the mud and bushes. Laney

Partin jumped out of the car and ran over to her. Defendant handed her pants to her and told her to put them on. Partin jerked her up from the steps and told her to come on. Peebles and defendant left. Partin then shoved Ms. Williams into her car, and drove away from the church. As the result of Ms. Williams' inquiry about her purse, Partin drove down Bailey Drive and through several streets before slowing down beside a house where defendant was walking across the lawn. Defendant, pursuant to Partin's instructions, threw Ms. Williams' purse to Partin who then drove to a Best Western Hotel located on the outskirts of Raleigh. After trying unsuccessfully to get into several of the rooms, Partin took Ms. Williams with him to the lobby of the motel. She stood behind Partin and mouthed words to the clerk to the effect that she was being raped. When the clerk went to the back to check for a key, Partin leaned across the desk and obtained a key from the board. When the clerk returned, Ms. Williams mouthed the number of the key taken by Partin. Partin took Ms. Williams around to the side of the building where he was taken into custody by police officers.

Ms. Sally Lynn Davis, night auditor for the Best Western Motel, Detective L. K. Barbour and Officer D. S. Overman gave testimony which substantially corroborated a portion of Ms. Williams' testimony. The trial judge correctly instructed the jury that this evidence was for the purpose of corroboration only.

Detective Barbour also testified concerning a statement made to him by defendant. According to defendant's statement, he had gone with Mike Peebles and Laney Partin to the Fast Fare on Garner Road "to drink." While defendant was still seated in the car, Mike Peebles got out of the car to approach a young lady. Shortly thereafter, Laney Partin went over to talk with her. Then defendant and Peebles left and drove down Bailey Drive. Defendant stated that they soon stopped and he headed back on foot, at which time he saw Partin holding the young lady's arm. Defendant picked up her belongings and went to the church. Defendant admitted that all three of the men had intercourse with Ms. Williams.

Defendant presented no evidence.

The jury returned verdicts of guilty as to all three charges. The trial judge imposed consecutive life sentences on the convic-

tions of first-degree rape and first-degree sexual offense and a concurrent sentence of three years upon the conspiracy conviction.

*Rufus L. Edmisten, Attorney General, by Robert L. Hillman, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Marc D. Towler, Assistant Appellate Defender, for defendant appellant.*

BRANCH, Chief Justice.

[1] Defendant contends that the trial court erred in admitting into evidence certain statements made by Laney Partin and Michael Peebles. Defendant maintains that these statements were hearsay and did not fall within the exception applicable to statements made by co-conspirators because the State had not shown that a conspiracy existed at the time the statements were made.

The rule governing the admission of co-conspirators' statements is that once the State has made a *prima facie* showing of the existence of a conspiracy, "the acts and declarations of each party to it in furtherance of its objectives are admissible against the other members." *State v. Conrad,* 275 N.C. 342, 348, 168 S.E. 2d 39, 43 (1969). Prior to considering the acts or declarations of one co-conspirator as evidence against another, there must be a showing that:

(1) a conspiracy existed; (2) the acts or declarations were made by a party to it and in pursuance of its objectives; and (3) while it was active, that is, after it was formed and before it ended.

*Id.; State v. Tilley,* 292 N.C. 132, 232 S.E. 2d 433 (1977).

Defendant contends that the State's evidence was insufficient to make a *prima facie* showing that a conspiracy existed at the time Partin's and Peebles' out-of-court statements were made. He argues that there is insufficient evidence that defendant had any involvement until he appeared to retrieve Ms. Williams' purse, and therefore, any statements made prior to that time were inadmissible. We disagree.

First, it is well settled that a conspiracy "may be, and generally is, established by a number of indefinite acts, each of

which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *State v. Whiteside*, 204 N.C. 710, 712, 169 S.E. 711, 712 (1933). In order to make out a *prima facie* case, the State must produce "sufficient evidence to authorize, but not necessarily compel" the jury to find that a conspiracy existed. 2 Brandis on North Carolina Evidence § 201 (2d Rev. Ed. 1982).

A review of the above-stated facts leads us to conclude that there was ample evidence to permit, but not compel, the jury to find that a conspiracy to commit the sexual assaults against Ms. Williams was formed among defendant, Peebles and Partin. These three men were in the Fast Fare parking lot drinking when they observed Ms. Williams enter the parking lot. Shortly thereafter, Peebles went to her automobile and was quickly joined by Partin. Peebles entered the automobile and after he left, Ms. Williams discovered that her keys were missing. Partin knew that Peebles had taken the keys and Partin enticed the victim into going with him on the pretext of recovering the keys. As Partin and Ms. Williams walked away from the service station lot and up Bailey Drive, defendant appeared and followed them. Partin then forced the victim to go to the church steps where all three men took part in sexual assaults upon the victim.

These facts would permit a jury to reasonably infer that the three men had agreed to commit sexual assaults upon Ms. Williams, had agreed on the manner in which she would be carried to a secluded place and agreed upon the location of the place where the crimes were to be committed.

The trial court properly admitted into evidence the statements made by the co-conspirators. This assignment is overruled.

[2, 3]   We note that, upon defendant's objection to the admission of this evidence, the trial court conducted a *voir dire* hearing and heard the proposed testimony. The court found facts and concluded that the State had established the existence of the conspiracy and that the challenged statements were admissible as statements of co-conspirators. Because of the nature of a conspiracy, the State can seldom establish a *prima facie* case of conspiracy by extrinsic evidence before tendering the acts and declarations of the conspirators which link them to the crimes

charged. Therefore, our courts often permit the State to offer the acts or declarations of a conspirator before the *prima facie* case of conspiracy is sufficiently established. Of course, the prosecution must properly prove the existence of the *prima facie* case of conspiracy before the close of the State's evidence in order to have the benefit of these declarations and acts. *State v. Tilley*, 292 N.C. 132, 232 S.E. 2d 433; *State v. Conrad*, 275 N.C. 342, 168 S.E. 2d 39; *State v. Jackson*, 82 N.C. 565 (1880). If inadmissible statements are admitted and it develops that a case of conspiracy has not been shown, then upon proper motion the trial judge may strike the evidence of declarations or acts of the co-conspirators or grant a defendant's motion for judgment as of nonsuit if there is insufficient evidence to take the case to the jury without the aid of such declarations or acts. 16 Am. Jur. 2d, "Conspiracy," § 38 (1979); *State v. Thompson*, 273 Minn. 1, 139 N.W. 2d 490, *cert. denied*, 385 U.S. 817 (1966).

[4] If the trial judge finds that the *prima facie* case has been shown, the declarations and acts of the conspirators are admitted and the case is sent to the jury with proper instructions. Of course, if he so chooses, the trial judge may, at any point in the trial, conduct a *voir dire* hearing in order to determine whether the evidence makes out a *prima facie* case of conspiracy for purposes of admitting the acts and declarations of co-conspirators in furtherance thereof.

Defendant assigns as error the failure of the trial court to dismiss the charge of first-degree sexual offense. He argues that the evidence showed only that he aided and abetted in that offense.

The trial judge submitted the charge of first-degree sexual offense solely on the theory that defendant acted in concert with, or aided and abetted, Peebles and Partin in their commission of a first-degree sexual act.

G.S. 14-27.4(a) defines first-degree sexual offense and provides in pertinent part:

§ 14-27.4. First-degree sexual offense.

(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

\*     \*     \*     \*

(2) With another person by force and against the will of the other person, and

a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon; or

b. Inflicts serious personal injury upon the victim or another person; or

c. The person commits the offense aided and abetted by one or more other persons.

[5] It is well established that a person who is present and aids and abets another in the commission of a criminal offense is as guilty as the principal perpetrator of the crime. *State v. Keller,* 268 N.C. 522, 151 S.E. 2d 56 (1966). This Court has also held that, under our first-degree sexual offense statute, an aider and abettor of a sexual offense is guilty of a first-degree sexual offense or nothing at all. *State v. McKinnon,* 306 N.C. 288, 293 S.E. 2d 118 (1982); *State v. Barnette,* 304 N.C. 447, 284 S.E. 2d 298 (1981). Under the statutory scheme, a person who commits a sexual act "with another person by force and against the will of the other person," and who also is "aided and abetted by one or more persons" is guilty of a first-degree sexual offense. An aider and abettor is as guilty as the principal offender, and thus an aider and abettor of any sexual offense *ipso facto* becomes guilty of a first-degree offense. *Id.*

[6] It is evident that the Legislature, by its enactment of G.S. 14-27.4(a)(2)c., chose to include in the more serious first-degree categories those sexual offenses which involved aiders and abettors and to subject to a harsher penalty those who participated in gang assaults, regardless of the actual role of the participant. G.S. 14-27.4. *See* G.S. 14-27.2 (first-degree rape). In so doing, the Legislature acknowledged the increased severity of rapes and other sexual offenses committed by persons acting in concert.

A California court, addressing its statute on rapes committed by parties acting together in concert, observed that the purpose of the provision was "to provide increased punishment where there is a gang sexual assault and to insure that those who participate in such assaults, either by personally engaging in the

ultimate sexual act or by voluntarily helping others to accomplish it, receive the enhanced punishment." *People v. Calimee*, 49 Cal. App. 3d 337, 341, 122 Cal. Rptr. 658, 660 (1975). Another California court summed up the legislative purpose succinctly:

> Rape is never very funny and one-on-one rape is hardly a laughing matter. However, it is even more reprehensible when committed by two or more persons.

*People v. Lopez*, 116 Cal. App. 3d 882, 886, 172 Cal. Rptr. 374, 376 (1981).

[7] Even so, defendant argues that his offense, aiding and abetting, is being improperly twice used against him to elevate his punishment. In essence, he contends that his aiding and abetting first elevated the principal offense to one of first degree, and then was used again to make him a participant in that crime.

Defendant makes no double jeopardy claim but rather attempts to draw an analogy between his case and those death penalty and presumptive sentencing cases in which this Court has struck down aggravating factors which duplicate an element of the underlying offense. *E.g., State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981); *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979), *cert. denied*, 446 U.S. 941 (1980).

It is true that we have consistently held that a factor which is an element of an underlying offense cannot also be used to aggravate, or elevate, the sentence imposed. In *State v. Cherry*, 298 N.C. at 113, 257 S.E. 2d at 567-68, addressing a felony murder sentencing issue, we said,

> Once the underlying felony has been used to obtain a conviction of first degree murder, it has become an element of that crime and may not thereafter be the basis for additional prosecution or sentence. Neither do we think the underlying felony should be submitted to the jury as an aggravating circumstance in the sentencing phase when it was the basis for, and an element of, a capital felony conviction.

Defendant also relies upon *People v. Haron*, 85 Ill. 2d 261, 422 N.E. 2d 627 (1981), for his contention that the State may not twice use his aiding and abetting against him. In *Haron*, the defendant was charged with both armed violence and aggravated battery.

The armed violence statute prohibited commission of any felony "while armed with a dangerous weapon." Ill. Rev. Stat. 1979, ch. 38, par. 33A-2. However, the charge of aggravated battery was itself a felony which had been elevated from simple battery due to the use of a dangerous weapon. The court held that the predicate felony had an underlying element which could not then also be used to charge and convict defendant of the separate offense. The court noted,

> Our review of the language of the statute and the authorities leads us to conclude that the General Assembly did not intend that the presence of a weapon serve to enhance an offense from misdemeanor to felony and also to serve as the basis for a charge of armed violence.

*Id.* at 278, 422 N.E. 2d at 634.

Defendant's reliance upon our sentencing cases as well as upon *Haron* is misplaced. Here we are not concerned with the aggravation or elevation of a sentence; nor are we concerned with conviction of two offenses based on an unfair duplication of one element. In this case, defendant has only been convicted of one crime, to wit, a first-degree sexual offense by reason of his aiding and abetting. While it is true that aiders and abettors are as guilty of the offense as are principals, *State v. Keller*, 268 N.C. 522, 151 S.E. 2d 56 (1966), it is likewise true that aiding and abetting has a separate and distinct identity. *See State v. Graven*, 52 Ohio St. 2d 112, 6 Ohio Op. 3d 334, 369 N.E. 2d 1205 (1977). In this case, the principal acts constituting the crime were actually committed by Partin and Peebles. Though his participation and assistance made him guilty as a principal, defendant nevertheless did not commit the actual acts constituting the first-degree sexual offense. Thus, while defendant's acts of assistance were properly used under the statute to elevate the charges against Peebles and Partin to first-degree offenses in the first instance, defendant's acts of aiding and abetting were used against him only once, that is, to find him guilty of the crime of first-degree sexual offense by reason of aiding and abetting. Simply stated, defendant was convicted of only one offense, first-degree sexual offense by reason of his aiding and abetting a first-degree sexual offense committed by two other persons. He has not been subjected to multiple convic-

tions or to enhanced punishment by an improper use of the same element twice. This assignment is overruled.

Defendant received a fair trial, free from prejudicial error.

No error.