STATE OF NORTH CAROLINA v. E. Z. BELL

No. 598A83

(Filed 5 June 1984)

1. **Kidnapping § 1— indictment for first degree kidnapping**

A proper indictment for first degree kidnapping must not only allege the elements of kidnapping set forth in G.S. 14-39(a) but must also allege one of the elements set forth in G.S. 14-39(b), to wit, that the victim was not released in a safe place, was seriously injured, or was sexually assaulted. Where the indictments failed to allege any one of the elements set forth in G.S. 14-39(b), the jury's verdicts of guilty of kidnapping will be considered as verdicts of guilty of kidnapping in the second degree.

2. **Rape and Allied Offenses § 3— indictments for attempted rape—failure to allege victims were females**

Indictments were not insufficient to charge crimes of attempted rape because they failed to allege that the victims of the crimes named in the indictments were females. If defendant had serious doubts as to the gender of his victims, he was free to determine that fact by moving for a bill of particulars. G.S. 15-144.1(a).

3. **Rape and Allied Offenses § 5— first degree sexual offense by aiding and abetting—sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of a first degree sexual offense based on the theory that he aided and abetted his brother in the commission of the offense where it tended to show that defendant had, earlier in the evening, actively supported his brother's ultimatum to two girls that either they would have sex or walk back to Shaw University from a secluded area on the outskirts of Cary; defendant, together with his brother, refused to let the girls out of the car when they returned to Raleigh; defendant and his brother discussed which girl each wanted and defendant's brother stated repeatedly that he was going to "get some [sex]"; defendant told the girls to take off their clothes or he and his brother would take them off; defendant left the car with one of the girls but thereafter returned to warn his brother that the girl had escaped and the police had been called; defendant knew that his brother was attempting to rape the second girl in the car; the second girl was upset, crying, and fighting off defendant's brother as

State v. Bell

defendant attempted to drive the car to a different location; and the sex offense by defendant's brother occurred during this time.

**4. Rape and Allied Offenses § 5— attempted first degree rape—guilt as aider and abettor**

Defendant was properly convicted of attempted first degree rape as an aider and abettor where the evidence tended to show that defendant's brother intended to have sexual intercourse with the victim by force and without her consent, and that in defendant's presence and with his encouragement, defendant's brother physically forced himself upon the victim with the intent to rape her.

**5. Rape and Allied Offenses § 5— attempted first degree rape—defendant aided and abetted by another**

The State's evidence was sufficient to sustain the conviction of defendant for attempted first degree rape on the theory that defendant was aided and abetted in this attempt by his brother where it tended to show that defendant, with the assistance and encouragement of his brother, kept the victim and another female confined in the car until they reached a secluded area, that during this time the two men discussed which girl each wanted, that there were repeated references to "getting some [sex]," and that defendant ordered the females to take off their clothes or he and his brother would take them off, notwithstanding defendant's actual physical assault on the victim took place outside the presence of his brother after defendant and the victim had left the car, since the attempt was complete upon defendant's act in ordering the females to remove their clothes.

**6. Conspiracy § 6; Rape and Allied Offenses § 5— conspiracy to commit rape— sufficiency of evidence**

The evidence of record, including evidence of the continuing shared mutual intent of defendant and his brother to take the victims to a secluded place and there to engage in sexual intercourse with the victims by force and against their will, was sufficient to permit, but not compel, the jury to conclude that a conspiracy to commit the sexual assaults against the victims was formed between defendant and his brother.

**7. Conspiracy § 5.1; Criminal Law § 79— acts and statements of co-conspirator**

The acts and statements of defendant's co-conspirator, his brother, were properly admitted into evidence where the State established a prima facie case of conspiracy by defendant and his brother to commit rape.

**8. Criminal Law § 42.6— knife found in inventory search of car—chain of custody**

A hawkbill knife found in the glove compartment of a car during an inventory search was not inadmissible on the ground that the State could not show an unbroken chain of custody because the inventory search was not conducted until after the car had remained in a garage overnight where a voir dire hearing disclosed that the automobile was locked by an officer who kept the keys; it was then towed to a privately owned garage which was experienced in handling vehicles involved in crimes; the automobile was placed in a locked area within the garage where it remained until law officers searched the ve-

hicle less than six hours later; when officers appeared at the garage, the vehicle was secure in its locked area; and the officer who had the key to the vehicle could see no change in its condition.

**9. Criminal Law § 33.3; Rape and Allied Offenses §4— sexual offenses—admission of knife not used in crimes**

Although a hawkbill knife found in the glove compartment of a car used in the crimes of kidnapping, attempted rape and sexual offense was neither used nor displayed during the course of the crimes and bore only slight relevance thereto, its admission into evidence was not prejudicial error where defendant failed to show that this evidence so inflamed the jury as to affect the outcome of the trial.

BEFORE *Preston, J.,* at the 6 September 1983 Criminal Session of Superior Court, WAKE County, defendant was tried and convicted of the following offenses: one count of first degree sex offense; two counts of attempted first degree rape; two counts of first degree kidnapping; and one count of conspiracy to commit rape. He was sentenced in a consolidated judgment to life imprisonment for the first degree sex offense and one count of attempted first degree rape; six years for the second count of attempted first degree rape, to run concurrently with the life sentence; two twelve year sentences for two counts of first degree kidnapping, to run concurrently with the life sentence; and one year for conspiracy to commit rape, to run concurrently with the life sentence. Defendant appeals of right pursuant to G.S. § 7A-27(a) from the imposition of a life sentence. Motion to bypass the Court of Appeals on the additional sentences was allowed 8 December 1983. Heard in the Supreme Court 9 April 1984.

In addition to assigning error to the admission of a co-conspirator's statements and evidence of a knife, defendant challenges the sufficiency of indictments charging kidnapping and attempted rape, and sufficiency of the evidence on the charge of first degree sex offense, attempted rape and conspiracy.

We find no error in the convictions and sentences for the crimes of first degree sex offense, the attempted rapes, and conspiracy. For error in the kidnapping indictments in failing to allege the applicable element of G.S. § 14-39(b), we remand those cases for entry of judgments for second degree kidnapping and sentencing thereon.

*Rufus L. Edmisten, Attorney General, by Richard L. Kuchar-ski, Assistant Attorney General, for the State.*

*Mike Dodd, attorney for defendant-appellant.*

MEYER, Justice.

Facts necessary to a determination of the issues raised are as follows:

On 10 March 1983, in the early evening, defendant and his brother, David Bell, "picked up" two young women as the women were walking from Shaw University to Chavis Heights in the City of Raleigh. Both girls, Janice Williams and Dierdre (Dee) Clark, testified at trial. Janice testified that David Bell was driving a beige Chevrolet Chevette. He and the defendant asked the two girls if they wanted a ride to the park. Janice got into the front passenger seat, while Dee sat in the back seat with the defendant. They drove to a convenience store and bought beer and ciga-rettes. They then drove to Durham, stopping at another store, and again to play pinball while David used the restroom. In Durham they briefly visited defendant's sister. Upon returning to Raleigh, David Bell turned off the Interstate and drove to a secluded dirt road somewhere near Cary and stopped the car. David informed the girls that they had a choice of having sex with him and the defendant or walking home. Although neither of the girls knew where they were, they left the car and began walk-ing. After a few minutes David drove the car alongside the girls and told them he would return them to Shaw as it was too far to walk. Both girls got into the back seat.

David drove the car through Cary to Hillsborough Street in Raleigh. When they reached the Capitol, Janice asked David to let them out as they could walk back to Shaw. David replied that the defendant had put gas in the car and that they would remain in the car until he said otherwise. Janice continued to ask to be let out. Following another stop at a convenience store, David drove down Poole Road. Janice attempted to escape by opening the passenger door from the back where she was seated. David Bell then stated, "let the stupid bitch fall out. If she doesn't kill herself, like that, then my gun or machete will kill her or hurt her." David Bell and the defendant then discussed which girl each wanted. David stopped the car in a secluded area off Hodge Road

(Leonard Road). Defendant ordered the girls to begin removing their clothes because if they didn't, "[W]e will take them off for you."

Janice convinced the defendant to leave the car and go for a walk. She asked defendant why he was treating her this way and he replied "don't come at me with that southern bull sh- - talk" and he grabbed her by her jacket. She was afraid he would hit her if she refused to comply with his sexual demands. Shortly afterwards she managed to break away and run to a nearby house for help. There was no one at home. The defendant caught her, hit her in the face, and pushed her between the door and the screen door. Janice was screaming loudly and the defendant ran off. She then went to another nearby house where Deborah Daniel, the occupant, promised to call the sheriff. Upon Ms. Daniel's advice, Janice went across the street to the home of Berry Bailey who also called the sheriff and stayed with Janice until the patrol car arrived. Both Ms. Daniel and Mr. Bailey described Janice as being extremely upset and concerned about her friend.

Dee Clark's account was substantially similar to that given by Janice Williams. In addition, Dee testified that as soon as the defendant and Janice left the car on Leonard Road, David Bell climbed into the back seat, removed his pants and after removing her clothes, attempted to have sexual intercourse with her. When defendant arrived back at the car after leaving Janice, he banged on the door and David let him in. David continued his assault on Dee, succeeding only in inserting his finger in her vagina, while defendant attempted to drive the car to a different location. At this time, defendant told David "[I]f you don't get some, I am." Defendant was unable to drive a manual transmission car so David climbed into the front seat and started the car as Deputy Stone arrived and drove in front of the Chevette, blocking the escape. The deputy approached the Chevette and ordered David Bell and the defendant out. David, however, put the car in reverse, catching the deputy with the open car door. The deputy shot David Bell. The defendant was arrested.

The defendant testified on his own behalf. He stated that he did want to have sex with the girls, but he wanted it to be voluntary; that he did not force himself upon anyone; and that although

he was aware that David Bell was attempting to rape Dee Clark, he considered that to be his brother's business.

[1]  Defendant first contends that the trial court erred in failing to dismiss the indictments charging first degree kidnapping. He bases his argument upon the authority of our recent holding in *State v. Jerrett,* 309 N.C. 239, 307 S.E. 2d 339 (1983). We agree.

The indictments in the present case provide as follows:

INDICTMENT—KIDNAPPING (83CRS16188)

| | |
|---|---|
| STATE OF NORTH CAROLINA | In the General Court of Justice |
| County of Wake | Superior Court Division |

The State of North Carolina
         vs.
E. Z. BELL, Defendant

THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 10th day of March, 1983, in Wake County E. Z. Bell unlawfully and wilfully did feloniously kidnap Dierdre Lynnette Clark, a person who had attained the age of 16 years, by unlawfully confining her; restraining her; and removing her from one place to another, without her consent; for the purpose of facilitating the commission of a felony, to wit: Rape or First Degree Sexual Offense. This act is in violation of the following: G.S. 14-39, and against the peace and dignity of the State.

The language in the second indictment parallels that above, alleging that the defendant kidnapped Janice Harriette Williams.

G.S. § 14-39 provides in pertinent part that:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restraining or removed or any other person.

(4) Holding such other person in involuntary servitude in violation of G.S. 14-43.2.

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class D felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

In *Jerrett* we held that in order to properly indict a defendant for first degree kidnapping, it was necessary for the State to allege both the essential elements of kidnapping as provided in G.S. § 14-39(a) *and* at least one of the elements of first degree kidnapping listed in G.S. § 14-39(b), to wit: that the victim was not released in a safe place, was seriously injured, or was sexually assaulted. The indictments in the present case fail to allege any one of the elements of first degree kidnapping as set out in G.S. § 14-39(b). They are, however, sufficient to support a conviction for second degree kidnapping. Therefore, the jury's verdicts will be considered verdicts of guilty of kidnapping in the second degree. The judgments imposed upon the verdicts of guilty of kidnapping in the first degree must be vacated and the cases remanded to Superior Court, Wake County, for judgments and resentencing as upon verdicts of guilty of kidnapping in the second degree. *See State v. Corley,* 310 N.C. 40, 311 S.E. 2d 540 (1984).

[2] Defendant next contends that the indictments for attempted rape are insufficient to allege the crime charged because neither indictment alleges that the victims of the crimes were females.

G.S. § 15-144.1 provides in pertinent part that:

(a) In indictments for rape it is not necessary to allege every matter required to be proved on the trial; but in the body of the indictment, after naming the person accused, the date of the offense, the county in which the offense of rape was allegedly committed, and the averment "with force and arms," as is now usual, it is sufficient in describing rape to allege that the accused person unlawfully, willfully, and feloniously did ravish and carnally know the victim, naming her, by force and against her will and concluding as is now required by law. Any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law as an indictment for rape in the first degree and will support a verdict of guilty of rape in the first degree, rape in the second degree, attempted rape or assault on a female.

In the present case the indictments complied fully with the requirements set forth above and were fully sufficient to charge attempted rape. Defendant presents a hypertechnical argument and offers no indication of how he has been prejudiced or misled by the State's failure to specifically state that *Dierdre Lynnette* Clark and *Janice Harriette* Williams were females. If defendant had serious doubts as to the gender of his victims, he was free to determine that fact by moving for a Bill of Particulars. *See e.g. State v. Whitfield,* 310 N.C. 608, 313 S.E. 2d 790 (1984); *State v. Effler,* 309 N.C. 742, 309 S.E. 2d 203 (1983). This assignment of error is overruled.

[3] Defendant contends that the evidence was insufficient as a matter of law to go to the jury on the indictment for first degree sexual offense.

It is well established law that in ruling on a motion to dismiss, the trial court is to consider the evidence in the light most favorable to the State; that the State is entitled to every reasonable inference to be drawn therefrom; that contradictions and discrepancies are for the jury to resolve; and that the defendant's evidence, unless favorable to the State, is not to be taken into consideration. *State v. Earnhardt,* 307 N.C. 62, 296 S.E. 2d 649 (1982).

On the facts presented the only theory upon which defendant's conviction of first degree sexual offense can be upheld is

that of aiding and abetting his brother, David Bell, in the commission of a first degree sex offense on Dierdre Clark. *See* G.S. § 14-27.4(a)(2)c. It is defendant's contention that his conduct amounted to nothing more than mere presence at the scene, and that there was no showing that he "knowingly encouraged, instigated or aided his brother in committing the crime." We disagree.

The relevant principles of law on this issue are as follows:

All who are present at the place of a crime and are either aiding, abetting, assisting, or advising in its commission, or are present for such purpose to the knowledge of the actual perpetrator, are principals and equally guilty. (Citations.) An aider and abettor is one who advises, counsels, procures, or encourages another to commit a crime. (Citations.) To render one who does not actually participate in the commission of a crime guilty of the offense committed, there must be some evidence tending to show that he, by word or deed, gave active encouragement to the perpetrator of the crime or by his conduct made it known to such perpetrator that he was standing by to lend assistance when and if it should become necessary. (Citations.) *State v. Ham*, 238 N.C. 94, 97, 76 S.E. 2d 346, 348; *State v. Burgess*, 245 N.C. 304, 309, 96 S.E. 2d 54, 58; *State v. Horner*, 248 N.C. 342, 350, 103 S.E. 2d 694, 700; *State v. Hargett*, 255 N.C. 412, 415, 121 S.E. 2d 589, 592; *State v. Gaines*, 260 N.C. 228, 231, 132 S.E. 2d 485, 487.

*State v. Aycoth*, 272 N.C. 48, 51, 157 S.E. 2d 655, 657 (1967); *see State v. Barnette*, 304 N.C. 447, 284 S.E. 2d 298 (1981).

In the present case, the evidence, when taken in the light most favorable to the State, tends to show: The defendant had, earlier in the evening, actively supported David Bell's ultimatum to the girls that either they would have sex or walk back to Shaw from the secluded area on the outskirts of Cary. Defendant, together with his brother, refused to let the girls out of the car when they returned to Raleigh. When they turned off Poole Road, defendant and his brother discussed which girl each wanted and David stated repeatedly that he was going to "get some [sex]." Defendant told the girls to take off their clothes or he and his brother would take them off.

The defendant returned to the car to warn his brother, David Bell, that Janice had escaped and the police had been called. He knew that David Bell was attempting to rape Dierdre and in fact at one point stated, "[I]f you don't get some, I am." Dierdre was upset, crying, and fighting off David Bell as the defendant attempted to drive the car to a different location. During this time the sex offense occurred. We find this evidence sufficient to support defendant's conviction of first degree sex offense based on the theory that he aided and abetted David Bell in the commission of the offense. *See State v. Barnette*, 304 N.C. 447, 284 S.E. 2d 298. *See also State v. Polk*, 309 N.C. 559, 308 S.E. 2d 296 (1983).

Defendant contends that the evidence was insufficient as a matter of law to go to the jury on the indictments for attempted first degree rape.

[4] The evidence, as recited herein, leaves little doubt that David Bell attempted to rape Dierdre Clark and that the defendant aided and abetted in this attempt. The two elements of attempted rape are the intent to commit rape and an overt act done for that purpose which goes beyond mere preparation but falls short of the completed offense. *State v. Freeman*, 307 N.C. 445, 298 S.E. 2d 376 (1983). Here there is plenary evidence that David Bell intended to have sexual intercourse with the victim, Dierdre Clark, by force and without her consent. In defendant's presence and with his encouragement, David Bell physically forced himself upon Dierdre Clark intending to rape her. Defendant was properly convicted of the attempted first degree rape of Dierdre Clark.

[5] With respect to defendant's conviction of the attempted first degree rape of Janice Williams, the evidence is likewise clear that the defendant intended to rape this victim. With the assistance and encouragement of his brother, David Bell, the defendant kept the victim confined in the car until they reached a secluded area off Hodge Road. During this time the two men discussed which girl each wanted. There were repeated references to "get[ting] some [sex]." This evidence of intent, coupled with defendant's act in ordering the women to remove their clothes, was sufficient to sustain his conviction for the attempted first degree rape of Janice Williams on the theory that defendant was aided and abetted in this attempt by his brother. While it is true that the actual physical assault on Janice took place outside the presence

of David Bell, we nevertheless believe that, on the facts as presented, the attempt was complete upon defendant's act in ordering the women to remove their clothes, an act which served to make the intent unequivocal. Because "the reason for requiring an overt act is that without it there is too much uncertainty as to what the intent actually was," "whenever the design of a person to commit a crime is clearly shown, slight acts in furtherance of the design will constitute an attempt." 21 Am. Jur. 2d *Criminal Law* § 159 (1981). This assignment of error is overruled.

[6] We likewise find no merit to defendant's final contention challenging the sufficiency of the evidence on the indictment for conspiracy to commit the rape of Janice Williams and Dierdre Clark.

A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful way. *State v. LeDuc*, 306 N.C. 62, 291 S.E. 2d 607 (1982); *State v. Bindyke*, 288 N.C. 608, 220 S.E. 2d 521 (1975). The agreement may be an express understanding or a mutual, implied understanding. *Id.* The existence of a conspiracy may be established by direct or circumstantial evidence. *Id.*

We believe that the evidence of record, including evidence of the continuing shared mutual intent of the defendant and his brother to take the victims to a secluded place and there to engage in sexual intercourse with the victims by force and against their will, was sufficient to permit, but not compel, the jury to conclude that a conspiracy to commit the sexual assaults against the victims was formed between defendant and his brother. *See State v. Polk*, 309 N.C. 559, 308 S.E. 2d 296.

[7] Defendant next contends that the trial judge erred in admitting David Bell's statements as testified to by Janice Williams. He argues that the State failed to establish the existence of a conspiracy, therefore the statements constituted hearsay testimony and their admission violated his sixth amendment right to confrontation.

In *State v. Polk*, 309 N.C. 559, 564, 308 S.E. 2d 296, 298-99, we stated that:

The rule governing the admission of co-conspirators' statements is that once the State has made a *prima facie*

showing of the existence of a conspiracy, "the acts and decla-
rations of each party to it in furtherance of its objectives are
admissible against the other members." *State v. Conrad,* 275
N.C. 342, 348, 168 S.E. 2d 39, 43 (1969). Prior to considering
the acts or declarations of one co-conspirator as evidence
against another, there must be a showing that:

> (1) a conspiracy existed; (2) the acts or declarations were
> made by a party to it and in pursuance of its objectives;
> and (3) while it was active, that is, after it was formed
> and before it ended.

We further stated that:

> Because of the nature of a conspiracy, the State can seldom
> establish a *prima facie* case of conspiracy by extrinsic
> evidence before tendering the acts and declarations of the
> conspirators which link them to the crimes charged. There-
> fore, our courts often permit the State to offer the acts or
> declarations of a conspirator before the *prima facie* case of
> conspiracy is sufficiently established.

*Id.* at 565-66, 308 S.E. 2d at 299.

We have held that the facts of this case were sufficient to
establish a *prima facie* case of conspiracy to commit rape. As
such, the acts and statements of the co-conspirator, defendant's
brother, were properly admitted into evidence. This assignment
of error is overruled.

Finally, defendant assigns as error the admission into evi-
dence of a hawkbill knife found in the glove compartment of
David Bell's car during an inventory search. He bases his argu-
ment on relevancy and chain of custody grounds. The weapon was
not used or displayed during the commission of the crimes.

[8]  We reject defendant's chain of custody argument by which
he contends that, because the inventory search was not conducted
until after the car had remained in a garage overnight, the State
could not show an unbroken chain of custody. A voir dire hearing
on this issue disclosed the following facts:

> (1) Law enforcement officials were at the scene of the inci-
> dent from the time of the initial confrontation until the ar-

rival of Officer J. L. Roberts of the City-County Bureau of Investigation.

(2) Officer Roberts processes crime scenes for physical evidence.

(3) The automobile was locked by Officer Roberts. One window was partially broken out. Officer Roberts kept the keys.

(4) The auto was then towed to a privately owned garage which was experienced in handling vehicles involved in crimes.

(5) The auto was placed in a locked area within the garage where it remained until law enforcement authorities searched the vehicle less than six hours later at 6:00 a.m. on March 11, 1983.

(6) When the law enforcement authorities appeared at the garage, the vehicle was secure in its locked area.

(7) Officer Roberts saw no change in the condition of the vehicle.

(8) The knife was found during the search of the vehicle at the garage.

In *State v. Abernathy*, 295 N.C. 147, 161, 244 S.E. 2d 373, 382 (1978), in response to a similar challenge, we stated:

Of the authentication of real evidence, this Court has said: "There are no simple standards for determining whether an object sought to be offered in evidence has been sufficiently identified as being the same object involved in the incident giving rise to the trial and shown to have been unchanged in any material respect. . . . Consequently, the trial judge possesses and must exercise a sound discretion in determining the standard of certainty required to show that the object offered is the same as the object involved in the incident giving rise to the trial and that the object is in an unchanged condition. [Citations omitted.]" *State v. Harbison*, 293 N.C. 474, 238 S.E. 2d 449 (1977). *See also* McCormick, Evidence § 212 (2d Ed. 1972).

We believe that under the present facts the trial judge properly admitted the hawkbill knife into evidence.

[9] We agree with the defendant that, inasmuch as the knife was neither used nor displayed during the course of the crimes, it bore slight relevance to the case. We do not agree, however, that the defendant was unduly prejudiced by its admission.

The State relies on *State v. Carnes*, 279 N.C. 549, 184 S.E. 2d 235 (1971), to support its argument that the availability and presence of the knife during the incident is one piece of circumstantial evidence probative of the defendant's intentions. In *Carnes* the contested evidence was a .38 loaded pistol which was not used in the robbery but was found beside the defendants' car within one-half hour of the robbery. In resolving the issue, the Court stated:

> If defendants, on the occasion of the robbery, had a loaded .38 pistol available for use in case their felonious venture "backfired," this would seem a relevant circumstance even though no necessity arose for the display or use of the loaded .38 pistol. Relevant or not, this evidence constituted an insignificant part of the State's case. The overwhelming evidence of defendants' guilt dispels any suggestion that prejudice resulted from the admission in evidence of the .38 pistol and of testimony that it was loaded.

*Id.* at 553, 184 S.E. 2d at 238.

If, as in *Carnes*, the contested evidence in the present case, the knife, had "any logical tendency, however slight, to prove a fact in issue," its relevancy was indeed slight. *See* 1 Brandis on North Carolina Evidence § 77 (1982). However, prior to the admission of this evidence an extensive voir dire was conducted and the able trial judge heard arguments from both the State and defense counsel. We will not disturb the ruling of the trial judge absent a showing that the admission of the knife misled the jury or unduly prejudiced the defendant. Here the defendant has failed to show that this evidence so inflamed the jury as to affect the outcome of the trial. The assignment of error is overruled.

In the first degree sexual offense, the two attempted rape cases and the conspiracy case, we find no error. The judgments imposed upon the verdicts of guilty of kidnapping in the first

degree are vacated and the cases are remanded to the Superior Court, Wake County, for entry of judgments and resentencing as upon verdicts of guilty of kidnapping in the second degree.

Case No. 83CRS16187 (First Degree Sex Offense, Attempted Rape)—No error.

Case No. 83CRS16190 (Attempted Rape)—No error.

Case No. 83CRS27837 (Conspiracy)—No error.

Case Nos. 83CRS16188 (Kidnapping) and 83CRS16189 (Kidnapping)—Judgment vacated and remanded for judgment and resentencing.